GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY v. ETHEL ROSALIE WALKER ET AL.

Decided December 4, 1907.

**1.—Action—Death of Mother—Illegitimate Children.**

Under the statutes of this State illegitimate children have a right of action for the negligent killing of their mother.

**2.—Railroads—Street Crossing—Charge.**

In a suit against a railroad company by minor children for the negligent killing of their mother at a street crossing, charge considered, and held not on the weight of evidence in assuming that the gates were up at the time deceased attempted to cross the track.

**3.—Contributory Negligence—Question of Fact.**

An attempt to cross a railroad track while the street gates were down is not necessarily negligence, but negligence *vel non* is a question of fact for the jury under all the circumstances.

**4.—Charge—Conflicting Evidence.**

A special charge which ignores a phase of the evidence on a controverted issue, is properly refused.

Appeal from the Forty-Fifth District Court, Bexar County. Tried below before Hon. J. L. Camp.

*Baker, Botts, Parker & Garwood, Newton & Ward* and *W. B. Tea-garden,* for appellant.

*J. R. Norton, James Routledge* and *Bertrand & Arnold,* for appellees.

JAMES, Chief Justice.—The action was brought by a next friend for the minors, Ethel Rosalie Walker and Clarence Edwin Canfield, who were children of Mrs. Lena Leeseman Canfield (also known as Lena Leeseman Walker). The petition alleged that she was married first to James Walker, who was dead, and married the second time to Joe Canfield, the father of the minor, Edwin; that said Joe Canfield had abandoned the said Lena and said minors, and has not been heard of for seven years, and his whereabouts can not be discovered, and is believed to be dead, but in the event he be living the action is brought in his behalf also.

The cause of action was the death of said mother, who was killed by being run over by one of appellant's cars in its yards, in San Antonio, on or about March 20, 1897. It was alleged, among other things, that at this place, which was a public crossing at Burleson and Walnut streets, defendant had gates, and that its agent or watchman at said crossing gates negligently failed to give any warning of the approach of said cars, and negligently opened the gates, and negligently invited said decedent to cross at a time when cars were about to, or were, in the act of crossing, thus negligently inducing the public and decedent to attempt to cross when there was great danger of her being killed by the cars. 2. That at the time she was invited by defendant's servants to cross, when they knew, or ought to have known by the exercise of ordinary care, that she would probably be killed if she attempted to do so. 3. That the night was dark, and impossible for decedent to see approaching cars, as said place was poorly lighted, and that she, relying on the said invitation and customs, endeavored to cross; that defendant negligently backed or shoved over said crossing some cars, having negligently failed to place any light or watchman at the end of the cars to notify persons of its approach, and negligently failed to ring a bell or blow a whistle for that purpose, and negligently failed to comply with a certain city ordinance with regard to ringing the bell.

Defendant pleaded by general demurrer, and special exception, general denial and contributory negligence, and also by plea of limitation against any claim in behalf of Joe Canfield.

There was a verdict against Joe Canfield, and in favor of the plaintiff Ethel for $2000 and of the plaintiff Clarence for $2500.

There was evidence that the two children were illegitimate children of the decedent Lena. That she was killed through the negligence of defendant, without contributory negligence on her part. The facts upon which these general conclusions concerning negligence are based will be referred to in connection with the appropriate assignments.

The first assignment of error, also the second, third and fourth, complain of refused instructions, and present the question whether

or not our statute giving a right of action for the death of a mother, to children of such person, embraces illegitimate children. The view of the trial judge was that the right extended to such children, and he refused all instructions that were asked to the contrary. We are of opinion that he did not err. It has been the legislative policy in this State to treat illegitimates as children, as far as a relationship to or through their mother is concerned. In our statute of descent and distribution such a child is given inheritable blood, and placed on the same footing as a legitimate child, with reference to its mother. Berry v. Powell, 19 Texas Ct. Rep., 718, and cases there cited. There can be no doubt that in this State the mother of such a child is legally entitled to its custody, its services and bound for its support. Under these circumstances it is difficult to see, in fact, we fail to see, wherein the status of such a child, in reference to its mother, is in law any different from that of a legitimate child. In other words, the law regards it as her child. Having clothed it with the relationship and attributes of a child, it is believed that the Legislature intended by the use of the word "children" in the statute, to include illegitimate children as parties entitled to maintain the action insofar as they claim with reference to their mother.

The rule that a statute in derogation of the common law is to be construed strictly, is responsible for the decisions cited by appellant sustaining the contrary view. That rule has been abolished by statute in this State. Turner v. Cross, 83 Texas, 223. We regard the opinion in the case of Ry. v. Marshall (Mo.), 25 S. W. Rep., 199, which reviews the decisions and discusses the question, as stating the rule that properly should obtain in this State. For these reasons we overrule the above assignments, and also the fifth and sixth assignments.

The seventh assignment complains of the following charge: "Or, if you find from the evidence that on or about the 20th day of March, 1897, the deceased mother of said minor plaintiffs endeavored to cross defendant's tracks at Burleson Street crossing, and that while she was attempting to cross said track defendant shoved a car against her, causing her death, and you further find that, at the time the said deceased mother of said minor plaintiffs attempted to cross said track, that the gates were up, and that this indicated that no cars or engine were about to cross said street, and you further find that said defendant company was guilty of negligence in permitting said gates to be up at said time, if you find they were in such position, and that such negligence, if any, was the direct cause of the death of said minors' mother, and you further find that said minors have been damaged pecuniarily by the death of their mother, and you further find that the deceased mother of said minors was not guilty of any negligence, that either caused or contributed to her death, then I charge you said minor plaintiffs are entitled to recover, and you will so find." The point is that it was on the weight of evidence, by assuming that at the time she attempted to cross the railway track the gates were up,

and that being up, indicated that no cars or engines were about to cross the track. There is no assumption of such facts in the charge.

The eighth alleges error in the refusal of the following instruction: "You are further charged that should you find and believe from the facts in this case that at the time Mrs. Walker went on the crossing of Walnut and Burleson Streets, defendant's gates were down, and she went around or under them and passed on the crossing to the tracks while the gates were down, then plaintiffs are not entitled to recover on this case and if you so find the facts to be, you will return a verdict for defendant." The fact of her entering the crossing while the gates were down and going upon the tracks, would not constitute negligence *per se,* as this charge would have announced. Whether or not the act was negligence would depend on the circumstances attending her act. She may have gone through while the gates were down, and been induced to proceed to cross by the fact that the gates were temporarily raised, there being testimony that just before she was struck the gates were raised and a wagon was allowed to pass over. Appellees' brief undertakes to cite us to other testimony as going to show that defendant's foreman, Hesse, induced her to leave a place of safety and endeavor to cross the track, by beckoning her to do so, but we need not stop to investigate this here, as evidence of the fact that the gates were raised, and a wagon crossed just before she was struck, would be sufficient to demonstrate the impropriety of giving the charge asked.

The ninth complains of the refusal of this charge: "You are charged, gentlemen of the jury, that, respecting the statement of the witness Hesse, that he invited or told the deceased to come across, whether you find this to be true or not, it is a matter which can not be charged against defendant in this case, in passing upon the issue as to whether or not its agents or employes were guilty of negligence. On that issue it is wholly immaterial whether he invited her to cross or not; in your deliberation you will so treat it." The proposition is, as we comprehend it, based upon the contention that there was nothing in the evidence to show either that Mrs. Walker saw or heard Hesse's invitations, or if she did, that she acted upon them and was led by them into danger, and consequently they had nothing to do with her being killed. This we find does not represent the true condition of the evidence. His testimony was that she was standing on this track when he first saw her. He also stated that she may have been standing between the tracks. That she was facing in his direction and had the appearance of looking at him. "I said all right, lady, come over, and beckoned to her. She didn't seem to notice me at the time and I made a step or two towards her and I says all right, madam, come over. At the same time I noticed two cars coming and I then ran towards her and beckoned and shouted as loud as I could to step back . . . and she realized I was talking to her and looked over her right shoulder and made a kind of a half turn and about that time the drawhead struck her." He also stated that she made a step and a half turn. It would

seem that if she was standing between the tracks, which would be a place of probable safety, his inducing her to change her position a step and a half turn may have had something to do with the result. However, it was in evidence by the witness Beaumont that she was not standing still, but in the act of walking across the track when struck. It was shown that Hesse had testified at the inquest that Mrs. Walker was about 30 feet from him when he first saw her.

It seems to us that the jury, who had the right to believe such of Hesse's testimony as they saw fit and to believe Beaumont where they saw proper, having evidence before them that she was in the ·act of crossing the track walking, and facing Hesse who was only 30 feet from her, and going towards her when he shouted to her, and that as he states he first shouted to her, "All right, lady, come over," and beckoned to her; that these circumstances would have warranted the conclusion that she was in the act of crossing in response to his invitation.

The remaining assignments complain of the overruling of the motion for new trial, for the reason that the verdict was against the evidence and the great weight of the evidence both as to the negligence of defendant and to the contributory negligence of Mrs. Walker. We overrule all these assignments, and also the assignment that the recovery allowed is excessive.

*Affirmed.*

Writ of error refused.