GLONA *v.* AMERICAN GUARANTEE & LIABILITY INSURANCE CO. ET AL.

No. 639.   Argued March 27–28, 1968.—Decided May 20, 1968.

*William F. Wessel* argued the cause for petitioner. With him on the brief were *Leonard J. Fagot, Marvin C. Grodsky,* and *Benjamin E. Smith.*

*David R. Normann* argued the cause for respondents. With him on the brief were *Frank S. Normann* and *Margot Mazeau.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

This suit was brought in the Federal District Court under the head of diversity jurisdiction to recover for a wrongful death suffered in an automobile accident in Louisiana.   The plaintiff, a Texas domiciliary, was the mother of the victim, her illegitimate son.   Had the Texas wrongful death statute [1] been applicable, it would, as construed, have authorized the action.[2]   But sum-

---

[1] Tex. Rev. Civ. Stat. Ann. Art. 4675 (1952).

[2] The Court of Appeals so indicated in this case.   379 F. 2d, at

mary judgment was granted on the ground that under Louisiana law [3] the mother had no right of action for the death of her illegitimate son. The Court of Appeals affirmed, rejecting the claim that the discrimination violated the Equal Protection Clause of the Fourteenth Amendment. 379 F. 2d 545. We granted the petition for a writ of certiorari, 389 U. S. 969, in order to hear the case along with *Levy* v. *Louisiana, ante,* p. 68.

Louisiana follows a curious course in its sanctions against illegitimacy. A common-law wife is allowed to sue under the Louisiana wrongful death statute.[4] When a married woman gives birth to an illegitimate child, he is, with a few exceptions, conclusively presumed to be legitimate.[5] Louisiana makes no distinction between legitimate children and illegitimate children where incest is concerned.[6] A mother may inherit from an illegitimate

---

546, n. 2. See *Galveston, H. & S. A. R. Co.* v. *Walker,* 48 Tex. Civ. App. 52, 106 S. W. 705 (1907).

[3] The applicable statutory provision is set out in *Levy* v. *Louisiana, ante,* at 69, n. 1. As the Court of Appeals noted, Article 2315 of the Louisiana Civil Code, providing for wrongful death recovery, gives a cause of action to "the surviving father and mother of the deceased, or either of them. . . ." The statute does not state "legitimate" father or "legitimate" mother, but the Louisiana courts have held that a decedent must be legitimate in order for an ascendant or sibling to recover for his death. *Youchican* v. *Texas & P. R. Co.,* 147 La. 1080, 86 So. 551 (1920); *Buie* v. *Hester,* 147 So. 2d 733 (Ct. App. La. 1962). See also *Green* v. *New Orleans, S. & G. I. R. Co.,* 141 La. 120, 74 So. 717 (1917); *Jackson* v. *Lindlom,* 84 So. 2d 101 (Ct. App. La. 1955). See also *Vaughan* v. *Dalton-Lard Lumber Co.,* 119 La. 61, 43 So. 926 (1907).

[4] *Chivers* v. *Couch Motor Lines,* 159 So. 2d 544 (Ct. App. La. 1964).

[5] La. Civ. Code Ann. Art. 184 (1952). See *Lambert* v. *Lambert,* 164 So. 2d 661 (Ct. App. La. 1964); *Harris* v. *Illinois Central R. Co.,* 220 F. 2d 734 (C. A. 5th Cir. 1955); cf. *Lewis* v. *Powell,* 178 So. 2d 769 (Ct. App. La. 1965).

[6] La. Rev. Stat. Ann. § 14:78 (1952).

child whom she has acknowledged and vice versa.[7] If the illegitimate son had a horse that was killed by the defendant and then died himself, his mother would have a right to sue for the loss of that property.[8] If the illegitimate son were killed in an industrial accident at his place of employment, the mother would be eligible for recovery under the Louisiana Workmen's Compensation Act, if she were a dependent of his.[9] Yet it is argued that since the legislature is dealing with "sin," it can deal with it selectively and is not compelled to adopt comprehensive or even consistent measures. See *McLaughlin* v. *Florida,* 379 U. S. 184, 191. In this sense the present case is different from the *Levy* case, where by mere accident of birth the innocent, although illegitimate, child was made a "nonperson" by the legislature, when it came to recovery of damages for the wrongful death of his mother.

Yet we see no possible rational basis (*Morey* v. *Doud,* 354 U. S. 457, 465–466) for assuming that if the natural mother is allowed recovery for the wrongful death of her illegitimate child, the cause of illegitimacy will be served. It would, indeed, be farfetched to assume that women have illegitimate children so that they can be compensated in damages for their death. A law which creates an open season on illegitimates in the area of automobile accidents gives a windfall to tortfeasors. But it hardly has a causal connection with the "sin," which is, we are told, the historic reason for the creation of the disability. To say that the test of equal protection should be the "legal" rather than the biological relationship is to avoid

[7] La. Civ. Code Ann. Arts. 918, 922 (1952).

[8] La. Civ. Code Ann. Arts. 2315, 922 (1952 and Supp. 1967).

[9] La. Rev. Stat. Ann. §§ 23:1231, 23:1252, 23:1253 (1964); *Thompson* v. *Vestal Lumber & Mfg. Co.,* 208 La. 83, 119, 22 So. 2d 842, 854 (1945); see Note, 20 Tulane L. Rev. 145 (1945).

the issue. For the Equal Protection Clause necessarily limits the authority of a State to draw such "legal" lines as it chooses.

Opening the courts to suits of this kind may conceivably be a temptation to some to assert motherhood fraudulently. That problem, however, concerns burden of proof. Where the claimant is plainly the mother, the State denies equal protection of the laws to withhold relief merely because the child, wrongfully killed, was born to her out of wedlock.

*Reversed.*

MR. JUSTICE HARLAN, whom MR. JUSTICE BLACK and MR. JUSTICE STEWART join, dissenting.[*]

These decisions can only be classed as constitutional curiosities.

At common law, no person had a legally cognizable interest in the wrongful death of another person, and no person could inherit the personal right of another to recover for tortious injuries to his body.[1] By statute, Louisiana has created both rights in favor of certain classes of persons. The question in these cases is whether the way in which Louisiana has defined the classes of persons who may recover is constitutionally permissible. The Court has reached a negative answer to this question by a process that can only be described as brute force.

One important reason why recovery for wrongful death had everywhere to await statutory delineation is that the interest one person has in the life of another is inherently intractable. Rather than hear offers of proof of love and affection and economic dependence from every person who might think or claim that the bell had

---

[*]This opinion applies also to No. 508, *Levy* v. *Louisiana, ante,* p. 68.

[1] See *Van Beeck* v. *Sabine Towing Co.,* 300 U. S. 342, 344–345, and cases there cited.

tolled for him, the courts stayed their hands pending legislative action. Legislatures, responding to the same diffuseness of interests, generally defined classes of proper plaintiffs by highly arbitrary lines based on family relationships, excluding issues concerning the actual effect of the death on the plaintiff.[2]

Louisiana has followed the traditional pattern. There the actions lie in favor of the surviving spouse and children of the deceased, if any; if none, then in favor of the surviving parents of the deceased, if any; if none, then in favor of the deceased's brothers and sisters, if any; if none, then no action lies. According to this scheme, a grown man may sue for the wrongful death of parents he did not love,[3] even if the death relieves

---

[2] An English statute, Lord Campbell's Act, 9 & 10 Vict., c. 93 (1846), "has served as the model for similar acts in most of the states in this country." F. Tiffany, Death By Wrongful Act 5 (2d ed., 1913). The statute provided that the action "shall be for the Benefit of the Wife, Husband, Parent, and Child . . . ." It is noteworthy that English and Canadian courts held the words "child" and "parent" to exclude illegitimate relationships. *Dickinson* v. *North Eastern R. Co.*, 2 Hurl. & Colt. 735, 9 L. T. R. (N. S.) 299; *Gibson* v. *Midland R. Co.*, 2 Ont. 658. A recent comprehensive survey of American law in the field comments that "[i]f there is a general rule today, it is probably that the word 'child' or 'children' when used in a statute pertaining to wrongful death beneficiaries, refers to a legitimate child or legitimate children, and thus only legitimates can recover for the wrongful death of their parents. This is merely an application of the principle that statutes patterned after Lord Campbell's Act which use the word 'kin' mean legitimate kin, and that where such statutes say 'father' or 'mother,' 'children,' 'brothers' or 'sisters,' they mean only legitimate father, mother, children, brothers or sisters." S. Speiser, Recovery for Wrongful Death 587 (1966).

[3] He may even, like Shakespeare's Edmund, have spent his life contriving treachery against his family. Supposing that the Bard had any views on the law of legitimacy, they might more easily be discerned from Edmund's character than from the words he utters in defense of the only thing he cares for, himself.

him of a great economic burden or entitles him to a large inheritance. But an employee who loses a job because of the death of his employer has no cause of action, and a minor child cared for by neighbors or relatives "as if he were their own son" does not therefore have a right to sue for their death.[4] Perhaps most dramatic, a surviving parent, for example, of a Louisiana deceased may sue if and only if there is no surviving spouse or child: it does not matter who loved or depended on whom, or what the economic situation of any survivor may be, or even whether the spouse or child elects to sue.[5] In short, the whole scheme of the Louisiana wrongful death statute, which is similar in this respect to that of most other States, makes everything the Court says about affection and nurture and dependence altogether irrelevant. The only question in any case is whether the plaintiff falls within the classes of persons to whom the

---

[4] Numerous Louisiana cases, reflecting the difficulty of attempting to determine the "real" interest of one person in the death of another, have insisted upon strict conformity to the required statutory relationship, and stated that the statute may not be extended by interpretation to analogous cases. E. g., Bradley v. Swift & Co., 167 La. 249, 119 So. 37 (1928). As it happens, this Court has had occasion to recognize Louisiana's interest in strict construction. See Mobile Life Ins. Co. v. Brame, 95 U. S. 754, holding that an insurance company, having paid the insurance after the wrongful death of its insured, had no cause of action against the tortfeasor under Louisiana law.

[5] See, e. g., Burthlong v. Huber, 4 So. 2d 480; Doucet v. Travelers Ins. Co., 91 F. Supp. 864. The Court speaks in Levy of tortfeasors going free. However, the deceased in that case left a legitimate parent. Under the Court's opinion, the right of legitimate and perhaps dependent parents to sue will henceforth be cut off by the mere existence of an illegitimate child, though the child be a self-supporting adult, and though the child elect not to sue. Incidentally, the burden of proving the nonexistence of such a child will be on the plaintiff parent. Trahan v. Southern Pacific Co., 209 F. Supp. 334.

State has accorded a right of action for the death of another.

Louisiana has chosen, as have most other States in one respect or another, to define these classes of proper plaintiffs in terms of their legal rather than their biological relation to the deceased. A man may recover for the death of his wife, whether he loved her or not, but may not recover for the death of his paramour.[6] A child may recover for the death of his adopted parents. An illegitimate may recover for the wrongful death of a parent who has taken a few hours to acknowledge him formally, but not for the death of a person who he claims is his parent but who has not acknowledged him.[7] A parent may recover for the death of an illegitimate child he has acknowledged, but not for the death of an illegitimate child whom he did not bother to acknowledge until the possibility of tort recovery arose.

The Court today, for some reason which I am at a loss to understand, rules that the State must base its arbitrary definition of the plaintiff class on biological rather than legal relationships. Exactly how this makes the Louisiana scheme even marginally more "rational" is not

---

[6] *Vaughan* v. *Dalton-Lard Lumber Co.*, 119 La. 61, 43 So. 926 (1907). At the same time, a wife may recover for the death of a man to whom she is lawfully married, although she is not dependent on him for support and, indeed, is living adulterously with someone else. *Jones* v. *Massachusetts Bonding & Ins. Co.*, 55 So. 2d 88.

[7] In *Thompson* v. *Vestal Lumber & Mfg. Co.*, 16 So. 2d 594, 596, aff'd, 208 La. 83, 22 So. 2d 842 (1944), the court stated: "Children referred to in this law [the wrongful death statute] include only those who are the issue of lawful wedlock or who, being illegitimate, have been acknowledged or legitimated pursuant to methods expressly established by law." Article 203 of the Louisiana Civil Code provides that children may be acknowledged by a declaration, by either or both parents, executed in the presence of a notary public and two witnesses.

clear, for neither a biological relationship nor legal acknowledgment is indicative of the love or economic dependence that may exist between two persons. It is, frankly, preposterous to suggest that the State has made illegitimates into "nonpersons," or that, by analogy with what Louisiana has done here it might deny illegitimates constitutional rights or the benefits of doing business in corporate form.[8] The rights at issue here stem from the existence of a family relationship, and the State has decided only that it will not recognize the family relationship unless the formalities of marriage, or of the acknowledgment of children by the parent in question, have been complied with.

There is obvious justification for this decision. If it be conceded, as I assume it is, that the State has power to provide that people who choose to live together should go through the formalities of marriage and, in default, that people who bear children should acknowledge them, it is logical to enforce these requirements by declaring that the general class of rights that are dependent upon family relationships shall be accorded only when the formalities as well as the biology of those relationships are present. Moreover, and for many of the same reasons why a State is empowered to require formalities in the first place, a State may choose to simplify a particular proceeding by reliance on formal papers rather than a contest of proof.[9] That suits for wrongful death,

---

[8] A more obvious analogy from the law of corporations than the rather farfetched example the Court has suggested is the elementary rule that the benefits of doing business in corporate form may be denied, to the willful, the negligent, and the innocent alike, if the formalities of incorporation have not been properly complied with.

[9] Even where liability arises under a federal statute defining rights in terms of a family relationship to the deceased, federal courts have generally looked to the law and the formalities of the appropriate State. In *Seaboard Air Line* v. *Kenney*, 240 U. S. 489, arising under the Federal Employers' Liability Act, 35 Stat. 65, as amended, 36

actions to determine the heirs of intestates, and the like, must as a constitutional matter deal with every claim of biological paternity or maternity on its merits is an exceedingly odd proposition.

The Equal Protection Clause states a complex and difficult principle. Certain classifications are "inherently suspect," which I take to mean that any reliance upon them in differentiating legal rights requires very strong affirmative justification. The difference between a child who has been formally acknowledged and one who has not is hardly one of these. Other classifications are impermissible because they bear no intelligible proper relation to the consequences that are made to flow from them. This does not mean that any classification this Court thinks could be better drawn is unconstitutional. But even if the power of this Court to improve

Stat. 291, this Court relied upon the North Carolina determination that the "next of kin" of an illegitimate deceased were his half siblings rather than his father. In *De Sylva* v. *Ballentine*, 351 U. S. 570, arising under the Copyright Act, 61 Stat. 652, 17 U. S. C. § 1 *et seq.*, we held that the word "children" in § 24 of that federal statute should be defined by reference to California law; California law provided that an illegitimate who had been acknowledged in writing by his father could inherit from him; since the illegitimate involved in *De Sylva* had been acknowledged, we held he was included within the statutory term. Two Justices, concurring in the unanimous result, argued that it was not proper to look to state law for a definition of the federal statutory term "children." Nowhere, however, was it suggested that we look to the Constitution. In *Bell* v. *Tug Shrike*, 332 F. 2d 330, the Fourth Circuit looked to Virginia law to determine whether the plaintiff was a "widow" entitled to bring suit under the Jones Act, 41 Stat. 1007, 46 U. S. C. § 688. Plaintiff had "married" her "husband" at a time when he was already married. Although the pre-existing marriage was later dissolved by divorce, after which plaintiff continued to live with the "husband," Virginia does not recognize common-law marriages. Consequently, plaintiff was held not to be a "widow." There was no suggestion that equal protection was in any way involved.

on the lines that Congress and the States have drawn were very much broader than I consider it to be, I could not understand why a State which bases the right to recover for wrongful death strictly on family relationships could not demand that those relationships be formalized.

I would affirm the decisions of the state court and the Court of Appeals for the Fifth Circuit.