241 So.2d 748 (1970)
CITY OF WEST PALM BEACH, Appellant,
v.
Roy C. COWART, Sr., and Widell Associates, Inc., a Florida Corporation, Appellee.
No. 69-437.
District Court of Appeal of Florida, Fourth District.
September 30, 1970.
Rehearing Denied December 29, 1970.
*749 Donald J. Lunny, of James, Bielejeski, Lunny & Thomas, and George B. Pomeroy, Fort Lauderdale, for appellant.
Larry Klein, of Cone, Wagner, Nugent, Johnson, McKeown & Dell, West Palm Beach, for appellee Cowart.
METZGER, JOSEPH P., Associate Judge.
This appeal emanates from a final judgment after a jury trial which resulted in a verdict in favor of Roy C. Cowart, Sr., in the sum of $20,000.00 and against the City of West Palm Beach, Florida, for the wrongful death by drowning under the theory of attractive nuisance of the plaintiffs' nine year old son, who was born out-of-wedlock.
The issues presented are whether the father of the illegitimate child has standing for the purpose of instituting a wrongful death action as a result of the child's death, and whether a defendant may question for the first time in its appellate brief the right of the father of an illegitimate child to bring a wrongful death action.
The plaintiff's nine year old son, Roy C. Cowart, Jr., died by drowning, in the northeast water catch basin of the defendant's water plant located at First Street and Tamarind Avenue in West Palm Beach, Florida around 6:00 P.M. on June 2, 1966. At the time of the drowning the City was involved in improving the land which the City owned north of the water plant with the result that several mounds of dirt and ponds of water existed on the defendant's property.
The testimony at trial revealed that the deceased Cowart boy and two friends came on to the defendant's property in the late afternoon of June 2, 1966, for the purpose of playing "Army" on mounds of dirt located along the nothern boundary of the defendant's property, at a point some distance away from the defendant's water treatment plant. The boys played on the sand piles until it became late and evening was at hand. At this point, one of the boys suggested that they wash off their muddy tennis shoes in the City's water basin. When the boys got to the basin, young Roy Cowart put both of his feet into the water and stood up. He then started to slide down into the water on the slippery surface of the catch basin, the basin having 45 degree angle sides. One of the boys then went for help, but when help arrived, it was too late.
At trial, the case proceeded to the jury (successfully for plaintiff) on the issue of attractive nuisance, the question of the father's status to bring suit being raised for the first time on appeal.
We initially treat the issue of whether on appeal, the parties are confined to advancing the theory of the case as tried in the trial court.
In Love v. Hannah, Fla. 1954, 72 So.2d 39, the Florida Supreme Court dealt with the problem sub judice. At page 43, supra, the Court speaking through Justice Drew stated:
"It is generally true that on appeal the parties are restricted to the theory of a case as tried in the lower court. 4 C.J.S. *750 Appeal and Error § 241(a), p. 465. This principle has certain well recognized exceptions, one of which is that if an error in the lower court affects fundamental rights, it may be raised for the first time on appeal." (citing 4 C.J.S. Appeal and Error § 242 p. 485.)
In the Love case, supra, the administrators of the estate of one Estelle Hannah brought suit under the wrongful death statute and under the survival statute. The case went to trial and a jury verdict in the amount of $10,000.00 was returned. Thereafter, the defendants filed their motion for new trial, this being done on March 5, 1953. On March 17, 1953, before disposition of defendants' motion for new trial or entry of final judgment, defendants filed a motion for summary judgment asserting that the plaintiffs had "no right of action and are not entitled to maintain this suit for the alleged wrongful death of Estelle Hannah." This rather unique motion was denied together with defendant's other motions.
The Supreme Court reversed the final judgment for the plaintiffs and granted a new trial with leave to the parties to file such further pleadings as were proper, it appearing from the record that the deceased was survived by a minor child.
A further perusal of the applicable law in this area reveals the following statement contained in 4 C.J.S. Appeal and Error § 242 pp. 746-747:
"The failure to present to the trial court that of which it is charged with judicial knowledge does not preclude its consideration for the first time on appeal, and a question which affects the right of recovery or right to maintain an action may be raised for the first time on appeal." (Emphasis supplied.)
Thus, in the case of Dragovich v. Greek Catholic Union of U.S.A., 1942, 149 Pa. Super. 609, 27 A.2d 259, the Pennsylvania appellate court stated at p. 260, supra, as follows:
"It is not clear from the record whether this question was presented to the lower court. (Referring to the right of the plaintiff beneficiary to bring the suit.) But it is fundamental; it goes to the root of the right of recovery, and we are bound to consider it." (Citing authorities)
Accordingly the appellate court reversed the final judgment for the plaintiff and entered judgment for the defendant.
The decisional definition of fundamental error in civil cases relates to the existence of the cause of action, the right to recover, or the jurisdiction of the trial court, and this is non-waiveable. See Florida East Coast Railway Co. v. Rouse, Fla. 1967, 194 So.2d 260; also, see Townsend v. Beck, 1939, 140 Fla. 553, 192 So. 390.
Applying the aforenoted law to the facts at hand the conclusion is reached that the question of the plaintiff's standing goes to the root of the right of recovery, and thus involved a fundamental right. This being so, the appellant falls within the ambit of the exception to the general rule as announced in Love v. Hannah, supra.
Directing our attention to the question of whether a father of an illegitimate child may recover under the Florida Wrongful Death Statute, we initially briefly review the positions taken by the parties.
The plaintiff father asserts, in his behalf, the holdings in two United States Supreme Court decisions, namely, Glona v. American Guarantee and Liability Insurance Co., 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 and Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436.
On the other hand the defendant argues that the Glona and Levy decisions do not buttress the plaintiff's position but rather reaffirm the law as it exists in Florida *751 citing Hadley v. City of Tallahassee, 1914, 67 Fla. 436, 65 So. 545.
In Glona, supra, the plaintiff was the mother of an illegitimate son who was killed in an automobile accident. She sued in the Federal District Court to recover under the Louisiana Wrongful Death Act which authorized a cause of action by the surviving father and mother of the deceased.
The trial court granted summary judgment on the basis that under Louisiana law the mother had no right of action for the death of her illegitimate son. The court of appeals affirmed, rejecting the contention that the alleged discrimination violated the equal protection clause of the Fourteenth Amendment of the Federal Constitution.
The United States Supreme Court reversed, holding:
"Where the claimant is plainly the mother, the State denies equal protection of the laws to withhold relief merely because the child, wrongfully killed, was born to her out of wedlock." (Emphasis supplied.)
In the companion case of Levy v. Louisiana, supra, five illegitimate children sought to recover under Louisiana's Wrongful Death Statute and Survival Act for the death of their mother. The trial court dismissed the action and the dismissal was affirmed on appeal through the Louisiana Court of Appeal and the Louisiana Supreme Court.
In reversing the dismissal the high court, speaking through Justice Douglas, stated 391 U.S. at p. 72, 88 S.Ct. at p. 1511, at p. 439 of the opinion as follows:
"Legitimacy or illegitimacy of birth has no relation to the nature of the wrong allegedly afflicted on the mother. These children, though illegitimate were dependent on her; she cared for them and nurtured them; they were indeed hers in the biological and in the spiritual sense; in her death they suffered wrong in the sense that any dependent would." (Emphasis supplied.)
Thus, an analysis of the Levy and Glona decisions reveals that the justification for permitting the claims was, on one hand, in Levy, based on the fact that the children were legally dependents of their mother regardless of their legitimacy and, on the other hand, in Glona on the fact that well-recognized rights have been established in favor of a mother as regards her illegitimate children. The holdings do not touch on the efficacy of a claim involving the father of an illegitimate child.
In Hadley v. City of Tallahassee, 1914, 67 Fla. 436, 65 So. 545, a decision of 1914 vintage, the plaintiff was the mother of an illegitimate child, victim of death by electricity. In the wrongful death action which ensued, the trial court entered judgment for the defendant city on the basis that the Florida Wrongful Death Act, as enacted in 1899, contemplated only legitimate children, and that no recovery could be had by the mother of an illegitimate child.
In reversing the trial court, the Florida Supreme Court stated at pages 545-546, supra, as follows:
"* * * our better judgment leads us to hold * * * that the mother of an illegitimate child, and the mother alone, has the right to sue for and recover damages for the death of such child by the wrongful act, negligence, carelessness or default of another." (Emphasis supplied.)
In arriving at its decision, the court referred to a 1906 Statute to the effect, supra, at p. 545:
"Bastards shall be capable of inheriting or transmitting inheritance on the part of their mother in like manner as if they had been lawfully begotten of such mother." (Emphasis supplied.)
The court noted that the quoted statute recognized, in the parentage of illegitimate *752 children, their mother as such, but left the parentage of the father where it was, before the passage of the statute, that is, as the court stated, p. 545, supra:
"* * * he (the father) is still nullius filius. In other words, under this statute a bastard has a mother fully recognized by law as such, but no father." (Emphasis supplied.)
An application of the above stated tenets to the facts at hand requires us to hold that the plaintiff father had no standing to maintain the suit, brought under the Wrongful Death Act, for the death of his illegitimate son.
Having reached the decision that there was no cause of action inherent in the father, this cause is remanded to the trial court with directions to vacate the final judgment and to enter in lieu thereof a judgment dismissing the action.
Reversed and remanded with directions.
CROSS, C.J., and McCAIN, J., concur.