THE STATE, EX REL. SEMETKO, ET AL., *v.* BD. OF COMMRS. OF LUCAS COUNTY.

(No. 7057—Decided December 9, 1971.)

*Mr. Robert A. Burns* and *Mr. Paul L. Geller*, for relators.

*Mr. Harry Friberg* and *Mr. George R. Hewes*, for respondents.

*Per Curiam.* This original action in mandamus was filed by the soldiers' relief commission of Lucas County, hereinafter referred to as relators, against the board of county commissioners, hereinafter designated respondents, to compel a levy of certain funds allegedly due the relators pursuant to R. C. 5901.11. R. C. Chapter 5901 provides a comprehensive plan for the payment of welfare benefits to indigent veterans of the armed forces of the United States.

R. C. 5901.02 provides for a "soldiers' relief commission" in each county. R. C. 5901.05 requires a soldiers' relief commission to appoint a "soldiers' relief committee" for each township or ward consisting of three persons with certain specified qualifications. Each township or ward committee is required by R. C. 5901.08 to compile a list of all applications for relief received from needy veterans or their dependents who reside in the particular township or ward serviced by the committee. The list so

compiled must be delivered by the committee to the soldiers' relief commission along with a detailed statement by each applicant concerning his financial condition. R. C. 5901.09.

R. C. 5901.11 provides that upon the receipt of the lists from the township and ward committees, the commission must certify the probable amount necessary for the relief of indigent persons for the ensuing year to the board of county commissioners. After the aforementioned amount has been certified by the commission, the board of county commissioners has a statutory duty to levy the funds necessary to raise the required relief subject to a ceiling of five-tenths of a mill per dollar on the assessed value of the property of the county. R. C. 5901.12 and 5901.13 provide that the commission fix the amount to be paid each month to the individuals or families entitled to relief and certify a list to the county auditor showing the monthly amount awarded to each individual. Upon receiving the list from the commission, complete with the necessary monthly disbursements, the auditor has a duty to issue his warrant upon the county treasurer for such amounts. (R. C. 5901.14.)

It is stipulated that respondents and relators entered into an arrangement in January, 1969, whereby the relators agreed to allow all vouchers for general relief from the soldiers' relief commission to be processed through the Lucas County welfare department.[1]

---

[1]The agreement of January, 1969, between the relators and respondents provides:

"Whereas the Board of Lucas County Commissioners has requested the Lucas County Soldiers' Relief Commission to authorize all vouchers from the Soldiers' Relief Commission for general relief be processed through the Lucas County Welfare Department.

"And Whereas the Board of Lucas County Commissioners has assured the Soldiers' Relief Commission, in writing, that it has no intention of taking away any of the rights of Soldiers' Relief Commissions guaranteed under Ohio Law;

"And Whereas the Board of Lucas County Commissioners agree that they, the Commission Members, will assume any and all legal responsibility for any actions which might arise as a result of this arrangement;

"And Whereas all present programs of the Lucas County Soldiers'

Pursuant to this ad hoc agreement, and despite the detailed procedure for processing applications enumerated in R. C. Chapter 5901, the relators received $177,807.56 for relief of indigent veterans for the year 1970. On May 26, 1970, the relators "certified" to the respondents the sum of $861,364.29 as the amount allegedly necessary for the relief of indigent veterans for the year 1971. The respondents rejected the request and voted to appropriate the sum of $100,325 as the budget for the soldiers' relief commission for 1971. On March 30, 1971, the relators requested a further review of the sum previously certified to the respondents but they declined to budget any further amount.

The relators have failed to comply with the provisions of R. C. Chapter 5901 in the following respects: (1) the relators have failed to appoint soldiers' relief committees for the various townships and wards within Lucas County; (2) no lists of needy applicants or their dependents have been compiled; (3) the relators have failed to procure statements reflecting the financial condition of applicants for welfare benefits; and (4) no determination has ever been made of the probable amount necessary for relief on the basis of the lists of indigent applicants. Therefore, the threshold issue before the court is whether the failure to comply with the statute is fatal to the relators' claim for relief.

R. C. 5901.11 provides:

"On the last Monday in May in each year, the soldiers' relief commission shall meet and *determine from the lists provided for in section 5901.08 of the Revised Code* the probable amount necessary for the aid and relief of indi-

Relief Commission, including the work project, shall continue in the basis as established by the Soldiers' Relief Commission;

"And Whereas the Lucas County Soldiers' Relief Commission may at any time, on notice to the County Commissioners, withdraw its consent to participate in this agreement.

"Therefore Be It Resolved that the Lucas County Soldiers' Relief Commission does hereby authorize the Lucas County Board of Commissioners to take the necessary steps to implement this agreement."

gent persons for the ensuing year, *together with an amount sufficient, in the judgment of the commission, to furnish relief to any such indigent persons not named on such lists* * * *. After determining the probable amount necessary for such purpose, *the commission shall certify it to the board of county commissioners, which, at its June session, shall make the necessary levy,* not to exceed five-tenths of a mill per dollar on the assessed value of the property of the county, to raise the required relief." (Emphasis added.)

Essentially, the relators contend that because the commission is authorized to furnish relief to certain indigents not named on the lists required by R. C. 5901.08, it follows that the commission is vested with the discretion to dispense with such lists entirely. The relators also contend, based on *State, ex rel. Binder,* v. *Board* (1962), 174 Ohio St. 23, that the legislature did not intend to make the compilation of lists of indigent persons mandatory upon the commission because of the absolute duty of the county commissioners to levy the necessary funds once a proper certification has been made. However, the Supreme Court specifically stated in the *Binder* case that there was no issue with regard to compliance by the soldiers' relief commission with the provisions of R. C. Chapter 5901.[2]

---

[2]The relators cite the Supreme Court's interpretation of R. C. 5901.11 in *Binder* for the proposition that county commissioners have a mandatory duty to levy the amount certified by a Soldiers' Relief Comision regardless of the means utilized in arriving at the sum certified. We cannot agree with the relators' broad construction of the holding in the *Binder* case. The Supreme Court held in *Binder* that county commissioners have a duty pursuant to R. C. 5901.11 to levy the necessary funds once the certification has been made "in a proper manner." However, the Court expressly declared that no question existed in *Binder* as to the commission's conformity with the provisions of R. C. Chapter 5901. Thus, the Supreme Court was not called upon to decide the legal effect of a commission's failure to follow the statutory procedure. Moreover, the Court carefully pointed out that it was not attempting to reach that question. Since the Supreme Court explicitly limited its holding in *Binder* to the precise facts of the case, this Court will not expand that holding to encompass the situation in the case at bar where the commission's failure to comply with the statutes is manifest.

Nevertheless, the relators argue that any certification by the commission within the five-tenths of a mill ceiling requires the county commissioners to levy a comparable amount regardless of the methods employed by the commission in computing the certification.

R. C. 5901.11 is part of an integrated and complex statutory plan and must be read *in pari materia* with R. C. 5901.05, et seq. The relator's view of R. C. 5901.11 does violence to the overall legislative design of R. C. Chapter 5901, and would require the court to conclude, in effect, that R. C. 5901.05-5901.09 are mere surplusage. This court is required, whenever possible, to effectuate each and every provision of an applicable statute. *See Commonwealth Loan Co.* v. *Downtown Lincoln Mercury Co.* (1964), 4 Ohio App. 2d 4; 50 Ohio Jurisprudence 2d 203, Statutes, Section 225. It is evident from the logical progression of R. C. 5901.05-5901.10 that the purpose of the legislation was to insure a reasonable and just amount of welfare benefits for indigent veterans. We conclude that relators may not ignore this comprehensive legislative plan and merely assign an arbitrary amount within the statutory limitation as the sum needed for the relief of indigent persons.

As an alternative argument, respondents urge that R. C. Chapter 5901 is repugnant to the concept of equal protection of the law embodied in the United States Constitution and the Constitution of Ohio. A decision on the constitutionality of R. C. Chapter 5901 is not essential in order to dispose of the case at bar and we find it unnecessary to reach the issue at this juncture.[3] *See American Can-*

---

[3] A classification which is based upon race or wealth is suspect per se and the courts have gravitated away from even a weak presumption of constitutionality in such cases. Thus, a heavy burden of justification will be cast upon a state which attempts to distinguish between individuals on the basis of race or wealth. *See Loving* v. *Virginia* (1967), 388 U. S. 1; *McLaughlin* v. *Florida* (1964), 379 U. S. 184; *Edwards* v. *California* (1941), 314 U. S. 160 (Jackson, J., concurring); *Griffin* v. *Illinois* (1956), 351 U. S. 12; *Tate* v. *Short* (1971), 401 U. S. 395; *Williams* v. *Illinois* (1970), 399 U. S. 235; *Morris* v. *Schoonfield* (1970), 399 U. S. 508; *see,* generally, *Developments in the law—Equal Protection,* 82 Harv. L. Rev. 1065 at 1087 (1969). The respond-

*cer Soc.* v. *Dayton* (1953), 160 Ohio St. 114; *Strongsville* v. *McPhee* (1944), 142 Ohio St. 534; 10 Ohio Jurisprudence 2d 195, Constitutional Law, Section 113.

For the reasons set forth, the court finds that the relators have shown no clear right to relief and the petition in mandamus is dismissed at relators' costs.

*Petition dismissed.*

POTTER, P. J., BROWN and WILEY, JJ., concur.

---

ents contend that the analysis which has been utilized in the cases dealing with classifications based upon race or wealth should be applied in the instant case. The thrust of this argument is that a classification based upon an individual's status as a veteran is "suspect" and is not a reasonably sufficient method of effectuating the statutory objective of caring for indigent citizens. Classifications based upon an individual's status of illegitimacy or upon a person's status as an habitual criminal have been held to violate the equal protection clause, and these decisions would seem to lend support to respondents' position. *See Levy* v. *Louisiana* (1968), 391 U. S. 68; *Skinner* v. *Oklahoma, ex rel. Williamson* (1942), 316 U. S. 535; *see* generally, *to Feed the Hungry: Judicial Retrenchment in Welfare Adjudication*, 58 Calif. L. Rev. 555 at 601 (1970); *see, also, Glona* v. *American Guar. and Liab. Ins. Co.* (1968), 391 U. S. 73.

The respondents also contend that since the classification in the instant case infringes a fundamental interest, the relators must show that the legislative distinction effectuates a compelling state objective. As a general rule, any recognized constitutional right may be classified as a fundamental interest. *See Shapiro* v. *Thompson* (1969), 394 U. S. 618 (the right to travel without restriction from state to state within the federal union); *Griffin* v. *Illinois* (1956), 351 U. S. 12 (the right to obtain a transcript on appeal from a criminal conviction); *Douglas* v. *California* (1963), 372 U. S. 353 (the right to counsel on appeal in criminal cases); *Harper* v. *Virginia Board of Elections* (1966), 383 U. S. 663 (the right to vote); *Carrington* v. *Rash* (1965), 380 U. S. 89 (the right to vote); *see*, generally, *Note, Discrimination Against the Poor and the Fourteenth Amendment*, 81 Harv. L. Rev. 435 (1967). No reviewing court has decided this precise issue by elevating the right to welfare to the status of a fundamental interest and the United States Supreme Court has impliedly rejected such a theory. *See Williams* v. *Dandridge* (1970), 397 U. S. 471; *cf. Comment, To Feed the Hungry*, 58 Calif. L. Rev. 555 (1970). However, at least one state supreme Court has recently expanded the fundamental interest doctrine to the field of education. *Serrano* v. *Priest*, 40 U. S. L. W. 2128 (Calif. Sup. Ct. Aug. 30, 1971).