Ethel L. **WATTS**, as Aunt and next friend for Patricia Sumlin and John T. Sumlin, minors, et al., Appellants,

v.

John G. **VENEMAN**, Acting Secretary of Health, Education and Welfare.

No. 72–1260.

United States Court of Appeals, District of Columbia Circuit.

Feb. 12, 1973.

Byron K. Welch and Rosalyn B. Bell, Washington, D. C., were on the brief for appellants.

Harold H. Titus, Jr., U. S. Atty., Kathryn H. Baldwin and William Kanter, Attys., Department of Justice, were on the brief for appellee.

Before McGOWAN, TAMM and WILKEY, Circuit Judges.

PER CURIAM:

In this action two distinct groups of illegitimate children seek Social Security benefits allegedly due them as the children of a deceased fully insured wage earner.

The children of deceased wage earner Jones (the Marlowe claimants), although illegitimate, had been recognized by Jones, were living with Jones at the time of his death, and were dependent upon Jones for their support. It was agreed by all parties that these children were eligible to receive payments under the applicable Social Security laws.[1]

The amount of these payments was reduced to zero, however, because decedent Jones died with two *legitimate* children in addition to the illegitimate children who are represented in this suit. The law provides that when a wage earner dies with both legitimate and illegitimate children, the payments due the legitimate children shall be paid first; if the payments due the legitimate children consume all of the amount payable to the dependents of the deceased, the illegitimate children receive nothing.[2] Thus, although both the legitimate and the illegitimate children were dependents of the deceased and although the illegitimates could have received benefits had there been no legitimate children, the illegitimate children of deceased wage earner Jones received nothing. The ille-

gitimate children of Jones protest and claim that due process requires that the Social Security payments be apportioned equally among the children of Jones regardless of their status.

The position of the children of the deceased wage earner Sumlin (the Watts claimants) is substantially different from that of the Jones children. Sumlin had never acknowledged his children, was not supporting them, and was not at the time of his death living with his children. The children of Sumlin were denied benefits not because of any precedence granted legitimate children (on the record before us it does not appear that there were any other children), but because they did not fulfill the statutory requirements necessary to qualify as dependents. Under these requirements an illegitimate child could receive benefits if (1) the father had recognized, either in writing or pursuant to court order, his alleged children; (2) the father had been ordered by a court to contribute to the children's support; (3) the children were living with or receiving support from the father at the time of the father's death; or (4) if under the intestacy laws of the wage earner's domicile the illegitimate children could inherit property.[3]

The Sumlin children do not contend that they qualify under the first three methods described above; they also do not contest the validity of these requirements. Rather, they attempt to obtain benefits under the provision that permits payments if the intestacy laws of the decedent's domicile allow illegitimates to inherit from their father. It is quite clear from a reading of the intestacy laws of the District of Columbia that illegitimates in the position of the Sumlin children may not inherit.[4] The Sumlin children, therefore, attack the

---

1. This eligibility was based on the provisions of 42 U.S.C. § 416(h)(3) (1970).

2. 42 U.S.C. § 403(a) (1970).

3. Provision for these first three methods of qualification may be found in 42 U.S.C. § 416(h)(3)(C) (1970). The final meth-

od of qualification is found in 42 U.S.C. § 416(h)(2)(A) (1970).

4. District of Columbia law provides that "the illegitimate children of a female . . . are capable to take real and personal estate by inheritance from their *mother* . . . in like manner as if

**532**

constitutionality of the District of Columbia intestacy laws, claiming that it violates due process for the statutory scheme to permit legitimate children to inherit while denying this privilege to similarly situated illegitimates.

On cross motions for summary judgment, the trial court granted the Government's motion and held that neither group of children was entitled to relief.[5] For the reasons stated below, we reverse as to the children of decedent Jones and affirm as to the children of decedent Sumlin.

## I. *The Children of Decedent Jones*

■ The Supreme Court's summary affirmance of the lower court decisions in Richardson v. Griffin[6] and Richardson v. Davis[7] established the right of the children of decedent Jones (the Marlowe claimants) to receive the Social Security payments they seek. The judgment in Richardson v. Griffin granted relief to an entire class of illegitimate children, of which the children of decedent Jones are a part. We are assured by the Government that these children are or soon will be receiving such payments.

Since *Griffin* establishes the right of the children of Jones to recover what they seek here, that decision is *res judicata* of this matter; neither this court nor the court below can grant any further relief. We, therefore, reverse the judgment of the trial court as to the children of decedent Jones and remand the case with a direction that the trial

court dismiss that portion of the action on the basis of the *res judicata* effect of Richardson v. Griffin, *supra*.[8]

## II. *The Children of Decedent Sumlin*

■ The *Griffin* and *Davis* cases mentioned above has no application to the children of decedent Sumlin (the Watts claimants). For the reasons given below, we are persuaded that the trial court was correct in denying the Sumlin children the relief they requested.

■ To the extent that appellants contend that the District of Columbia intestate succession statute is unconstitutional because it does not permit illegitimates to inherit as freely as legitimates, their argument must fail. The Supreme Court in Labine v. Vincent[9] recently affirmed the constitutionality of an intestacy statute which discriminated against illegitimate children in a manner similar to that of the District of Columbia scheme. In that decision the Court declined to extend the holdings of two earlier decisions[10] that had imposed limitations on the distinctions a state might draw between legitimate and illegitimate children:

> *Levy* did not say and cannot fairly be read to say that a State can never treat an illegitimate child differently from legitimate offspring.[11]

The Court continued by noting that traditionally states have been permitted to make policy judgments in the area of inter-family relations:

> But the power to make rules to establish, protect, and strengthen family

born in lawful wedlock." 19 D.C.Code § 316 (1967). The purpose of this provision was to remove the common law disability of inheritance through the maternal line. Southern R. Co. v. Hawkins, 35 App.D.C. 313, 21 Ann.Cas. 926 (1910). The existence of this special exemption for maternal inheritance indicates that the common law disability was intended to remain for paternal inheritance.

5. Watts v. Veneman, 334 F.Supp. 482 (D. D.C.1971).

6. 409 U.S. 1069, 93 S.Ct. 689, 34 L.Ed.2d 660 (1972).

7. 409 U.S. 1069, 93 S.Ct. 678, 34 L.Ed.2d 659 (1972).

8. Duke Power Co. v. Greenwood County, 299 U.S. 259, 267, 57 S.Ct. 202, 81 L.Ed. 178 (1936).

9. 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971).

10. Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968); Glona v. American Guarantee & Liability Ins. Co., 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968).

11. Labine v. Vincent, *supra*, 401 U.S. at 536, 91 S.Ct. at 1019.

life as well as to regulate the disposition of property left in Louisiana by a man dying there is committed by the Constitution of the United States-and the people of Louisiana to the legislature of that State. Absent a specific constitutional guarantee, it is for that legislature, not the life-tenured judges of this Court, to select from among possible laws.[12]

Further, we see no problem with the incorporation of the District of Columbia intestacy laws into the Social Security laws for purposes of determining the eligibility for payments to illegitimates. In considering this incorporation, it is vital that one bear in mind the *purpose* in making Social Security payments to dependent minors and the *nature* of such payments.

The entire thrust of the Social Security laws relevant to dependents is to provide benefits to those who were most likely to have relied upon the deceased for their support.[13] In light of this overriding purpose, it is well-established that Social Security benefits are not accrued property rights.[14] One's ability to receive benefits is not dependent solely upon the biological relationship between the decedent and his children, but also upon the probability that the children were dependent for support upon the deceased.

Congress in enacting the Social Security laws made various judgments about the probability that children are dependent. For example, it seems more logical that illegitimates would be dependent upon their father if he has recognized them, or if in fact he is contributing to their support. The incorporation of a state's intestacy laws for purposes of determining eligibility is in furtherance of this scheme. If an illegitimate child may not inherit, then the child's support following the father's death is less likely to be dependent upon what was received

upon the deceased's death than if the child could receive property following the wage earner's demise.

It must be remembered that the Social Security laws do not exclude all illegitimates from eligibility for payments. In this case, for example, the children of decedent Jones were and are fully eligible for support. Rather, the laws are reasonably designed to disqualify a class of illegitimates who are less likely, as a class, to possess the requisite biological or legal relationship to or economic dependency on the wage earner.

### III. *Conclusion*

For the reason given above, the judgment as to the children of decedent Jones is reversed and the case remanded with a direction that the cause be dismissed. With regard to the children of decedent Sumlin, the action of the trial court is affirmed.

So ordered.

---

12. *Id.* at 538, 91 S.Ct. at 1021.

13. S.Rep.No.404, 89th Cong., 1st Sess. 101 (1965), U.S.Code Cong. & Admin.News 1965, p. 1943.

14. Flemming v. Nestor, 363 U.S. 603, 610–611, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960).