IN THE MATTER OF
THE ESTATE OF CHESTER W. THOMPSON, DECEASED.

Passaic County Court
Probate Division

September 30, 1975.

*Mr. Edward F. Weiss* for estate of Chester W. Thompson, deceased (*Messrs. Weiss & De Luccia,* attorneys).

*Mr. Gerald W. Kolba,* attorney for widow, Christine Palmetier Thompson.

*Mr. Allan J. Kaplowitz,* attorney for guardian *ad litem* C. W. (*Messrs. Kiefer, Bollermann & Kaplowitz,* attorneys).

*Mr. Philip I. Kagan,* attorney for guardian *ad litem* M. N. (*Messrs. Fischer & Kagan,* attorneys).

*Mr. George D. Malhiot,* attorney for S. W.

ALTERMAN, J. D. C., Temporarily Assigned. Chester W. Thompson entered into four connubial relationships in his lifetime. The first was legally sanctioned. The second and fourth were merely ceremoniously performed. The third was entirely meretricious. These unions now give rise to various claims against the estate of Chester Thompson and generate a constitutional challenge to *N. J. S. A.* 3A:4–7.

The facts are not in dispute and are chronologically recited:

(a) On December 24, 1954 decedent married Christine Palmetier. Two children, Shirley and Nancy Ann, were born of this marriage. Decedent and Christine Palmetier Thompson were never divorced.

(b) On December 1, 1967 decedent entered into a ceremonial marriage with G. N. One child, M. N., was born of this union.

(c) On January 3, 1971 C. W. was born of a union between decedent and S. W. There was no ceremonial marriage.

(d) On August 21, 1971 decedent entered into a ceremonial marriage with J. B. No children were born of this alliance.

(e) All of the above-named persons survive decedent, who died intestate on April 18, 1972. His estate consists solely of personal property.

I

*N. J. S. A.* 3A:4–2 provides:

One-third of the personal property shall be distributed to the intestate's husband or widow, as the case may be, and the residue in equal portions among the intestate's children and such persons as legally represent any child who may have died.

Decedent's widow is Christine Palmetier Thompson. This marriage was not terminated during decedent's life. Because it subsisted until decedent's death, his subsequent ceremonial marriages were void *ab initio*. *Dacunzo v. Edgye*, 19 *N. J.* 443 (1955) ; *Thompson v. Monteiro*, 58 *N. J. Super.* 302 (Ch. Div. 1959). It is not pretended that decedent's relationship with S. W. ever achieved the dignity of a marriage.[1] Christine Palmetier Thompson, then, is entitled to one-third of the decedent's net estate.

Palpably, the two children born of decedent's only valid marriage are also entitled to share in their father's estate. But they do not do so exclusively, for the Legislature has mandated that

Any child heretofore or hereafter born of a ceremonial marriage is the legitimate child of both parents notwithstanding the marriage be thereafter annulled or declared void. Such child shall enjoy the status and rights to which he would have been entitled had he been born a valid marriage. [*N. J. S. A.* 9 :15–2]

Accordingly, the child born to decedent and G. N. is legitimate for the purpose of descent and distribution and shares equally in this estate with the two other legitimate children. The attribute of legitimacy is not denied because the ceremonial marriage was bigamous and void. See *In re Calogero*, 51 *N. J.* 345 (1968).

Decedent's last child, however, may not participate in this estate.

At common law, an illegitimate child was *nullius filius* and could not inherit from his mother or his putative father.

---

[1] Common law marriages contracted in this State after December 1, 1939 are not valid. *N. J. S. A.* 37 :1–10. Even before that date a common law marriage was valid only if no other impediment to the marriage existed. *Maxwell v. Maxwell*, 98 *N. J. Eq.* 493 (Ch. 1925).

*Schmoll v. Creecy*, 54 *N. J.* 194, 198 (1969); *Hammond v. Pennsylvania R. R. Co.*, 31 *N. J.* 244, 251 (1959). Our Legislature has ameliorated the harsh common law rule by the enactment of *N. J. S. A.* 3A:4–7:

> For the purpose of descent and distribution under this chapter to, through and from an illegitimate child, such child shall be treated the same as if he were the legitimate child of his mother, so that he and his issue shall inherit and take from his mother and from his maternal kindred, including his maternal ancestors, descendants and collaterals; and they, from him and his issue. When parents of an illegitimate child shall marry subsequent to his birth and recognize and treat him as their child, such child shall be deemed to have been made the legitimate child of both of his parents for the purpose of descent and distribution to, through and from him under this chapter.

The contention is that *N. J. S. A.* 3A:4–7 is unconstitutional in its application to this child because it differentiates between the right of a legitimate child and an illegitimate child to inherit from his father. Relying upon the companion cases of *Levy v. Louisiana*, 391 *U. S.* 68, 88 S. Ct. 1509, 20 *L. Ed.* 2d 436 (1968), and *Glona v. American Guarantee & Liability Ins. Co.*, 391 *U. S.* 73, 88 S. Ct. 1515, 20 *L. Ed.* 2d 441 (1968), it is argued that the distinction between legitimate and illegitimate children for the purpose of descent and distribution is a violation of the Equal Protection Clause of the United States Constitution. *U. S. Const.*, Amend. XIV.

Those cases are not apposite.[2] Rather, the Supreme Court's decision in *Labine v. Vincent*, 401 *U. S.* 532, 91 S. Ct. 101 28 *L. Ed.* 2d 288 (1971), is the controlling precedent.

---

[2] *Levy* and *Glona* both involve state wrongful death statutes. In *Levy* the statute did not authorize suit by an illegitimate child for damages resulting from the wrongful death of his mother. In *Glona* the statute did not authorize suit by the mother of an illegitimate for the wrongful death of her child. The court held both of these statutes offended the Equal Protection Clause. In *Schmoll v. Creecy, supra*, our Supreme Court observed (at 200) that it was

In *Labine* the father of an illegitimate child had, during his lifetime, publicly acknowledged his illegitimate child in accordance with Louisiana Law.[3] That acknowledgement gave the child a right to claim support from her father and his heirs and gave her the capacity to be a limited beneficiary under her father's will if he left a will. The father died intestate. The Louisiana court refused to recognize the child as her father's heir. In the United States Supreme Court the illegitimate child asserted that Louisiana's statutory scheme for intestate succession was invidiously discriminative and, therefore, unconstitutional under the Due Process and Equal Protection Clauses of the U. S. Constitution. The court rejected the challenge, even though it recognized that the state's rules of intestate succession may be discriminatory.

> \* \* \* But the power to make rules to establish, protect and strengthen family life as well as to regulate the disposition of property left in Louisiana by a man dying there is committed by the Constitution of the United States and the people of Louisiana to the legislature of the State. Absent a specific constitutional guarantee, it is for that legislature, not the life-tenured judges of this Court to select from among possible laws. [401 *U. S.* at 538, 91 *S. Ct.* at 1021, 28 *L. Ed.* 2d at 294]

In *Schmoll v. Creecy*, 104 *N. J. Super.* 126, 131 (App. Div. 1969), rev'd on other grounds, 54 *N. J.* 194 (1969), the court found that the distinction made in *N. J. S. A.* 3A:4-7 between the capacity of an illegitimate to inherit from his mother and the absence of a corresponding capacity to inherit from his father was not invidiously discriminative. The court considered this distinction to be a rational one because the birth of a child is a recordable event, while

---

"impossible to tell from *Levy* and *Glona* whether their thesis will embrace the devolution of intestate personal property, especially of the putative father."

[3]There is no statutory procedure in New Jersey for acknowledgement of illegitimate children. As to the status of a child acknowledged in a foreign jurisdiction, see *In re Spano*, 49 *N. J.* 263 (1967).

the determination of the identity of the father is often. uncertain.[4] Accordingly, I conclude that *N. J. S. A.* 3A:4–7. does not deny equal protection to C. W.

## II

A second issue is raised by a claim presented to the administrator for arrearages accumulated on an order for support of S. N. made by the Juvenile and Domestic Relations Court. An illegitimate child is entitled to support from his father and such an action is cognizable in the Juvenile and Domestic Relations Court. *N. J. S. A.* 9:16–2 and 3; *N. J. S. A.* 9:17–1 and 2.

Although the claim was not presented within the time limited for presentation of claims, *N. J. S. A.* 3A:24–3, the assets of the estate are sufficient to pay the claim and the same may be paid by the administrator. *N. J. S. A.* 3A:24–8.

## III

The final issue presented concerns the applications for counsel fees by the court-appointed administrator of the estate, the attorney for decedent's lawful wife and her children, the court-appointed guardians for the two illegitimate children and the attorney for S. W. Objection is raised only to the last request.

---

[4] *In Gomez v. Perez*, 409 *U. S.* 535, 93 S. Ct. 872, 35 *L. Ed.* 2d 56 (1973), the issue was whether state law may constitutionally grant legitimate children a judicially enforceable right to support from their natural fathers, and at the same time deny that right to illegitimate children. In its opinion remanding the case the court stated that under *Levy and Weber v. Aetna Cas. & Sur. Co.*, 406 *U. S.* 164, 92 S. Ct. 1400, 31 *L. Ed.* 2d 768 (1972) (illegitimate children may share in a workmen's compensation award), "a state may not invidiously discriminate against illegitimate children by denying them substantial benefits accorded children generally," and. while problems with respect to proof of paternity "are not to be brushed aside," yet they are not "an impeachable barrier that works to shield otherwise invidious discrimination," 409 *U. S.* at 538, 93 S. Ct. at 875, 35 *L. Ed.* 2d at 60.

■ An attorney is entitled to compensation for his services from a fund in a court where he had aided directly or indirectly in creating, preserving or protecting the fund. *Shilowitz v. Shilowitz,* 115 *N. J. Super.* 165, 188 (Ch. Div. 1971) mod. on other grounds, 119 *N. J. Super.* 311 (App. Div. 1972), *cert.* den. 62 *N. J.* 72 (1972).

■ It appears that at the time of decedent's death from an automobile accident he was living with S. W. Miss W. retained counsel, who initiated these proceedings. Until that time no action was taken with respect to the administration of this estate. Through counsel's efforts and investigation, assets of the estate were discovered, the names and status of the possible claimants were uncovered, and all were notified of the existence of the assets and of their possible respective interests. I am satisfied that if these services had not been performed, there would be no fund to distribute.

It is true that the assets of this estate represent the proceeds of life insurance policies, and so, in one sense, were not created, protected or preserved by counsel's intercession. Nevertheless, the funds of the estate would not have been in court and available for distribution had counsel not initiated these proceedings. In short, no one would have received any benefit without the rendition of these services.

It is also clear that counsel for S. W. could not have expected, after his investigation, that his client would in any way benefit from these proceedings. I conclude, therefore, that the services rendered redounded to the benefit of all of the heirs, and that all should participate in compensating counsel for those services.

Having considered the affidavits submitted pursuant to *R.* 4:42–9(b), the guidelines for attorney's fees set forth in the disciplinary rules, *DR* 2–106(a), the fact that the gross estate of $15,031.60 is subject to claims, commissions and other costs, the following fees are awarded:

| | | |
|---|---|---:|
| a) | Administrator | $ 600 |
| b) | Each guardian *ad litem* | 200 |
| c) | Attorney for S. W. | 350 |

■ Although no objection is taken to the request for fees made by the attorney for decedent's lawful wife and her children, I conclude that his services advanced the interests only of his own client, and in no way created, preserved or protected the fund in court. No award by the court of counsel fees to him is authorized. *Sunset Beach Amusement Corp. v. Belk*, 33 *N. J.* 162.