**Decided  October  30, 1981**

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

COMMONWEALTH TRIAL COURT

IN RE ESTATE OF       )        CIVIL ACTION NO. 81-176
                      )
EDUARDO CALUB REFUGIA,)
                      )    ORDER RE: MANNER OF DISTRIBUTION
        Deceased.     )              OF ESTATE
_____)

The Administratrix has filed her petition for decree of final distribution and asks that the assets remaining on hand for distribution be distributed 50% to the Administratrix as the surviving spouse of the decedent and 50% to the children of the decedent.

What should be a simple matter of distribution presents a perplexing problem. As far back as 1966, the courts have requested the legislature to enact laws clarifying the inheritance rights of heirs. Blas v Blas, 3 TTR 99 (Tr. Div. 1966).

Whenever the matter of distribution of assets has come to the courts, confusion and inconsistency has resulted. Estate of Hee, 5 TTR 144 and 5 TTR 185 (Tr. Div. 1969); Estate of Rose, 5 TTR 648 (Tr. Div. 1972); Estate of Juaro, 7 TTR 113 (Tr. Div. 1974).

Prior to the commencement of the Commonwealth of the Northern Mariana Islands, the Trust Territory High Court

(both trial division and appellate division) grappled with this problem with mixed results. Muna v Muna, 7 TTR 632 (App. Div. 1978); Estate of Igisaiar, 7 TTR 602 (App. Div. 1978).

The advent and culmination of the awarding of claims by the Micronesian Claims Commission caused the Trust Territory High Court to settle upon some system of intestate succession in view of the fact that there were no statutory guidelines. There developed a distribution by right of representation (per stripes and not per capita). Mendiola, et al v Castro, et al Marianas Civil Action No. 171-76, October 27, 1976; Coleman v Palacios, 7 TTR 583 (App. Div. 1978).

These cases decided that the children of the deceased would share by right of representation. However, the rights of the widow were not clarified. In Coleman, supra, the widow was not a claimant at the trial and the appellate division declined to decide her status.

In The Estate of Guerrero, 3 TTR 546 (Tr. Div. 1968) and Palacios v Coleman (Civil Action No. 78-49, District Court, Northern Mariana Islands, February 15, 1980), it was held that the widow does not share in land held by her husband. The land passes to the children who have the responsibility according to Chamorro custom to support the widow.

Of course, where there is customary law not in conflict with the statutory law, the court will apply the former. 1 TTC §102. But it appears that in so far as personal property is concerned, there is no customary law as to how it should be distributed. This results probably from the fact that

only until the last few decades have the inhabitants of the Northern Mariana Islands been in a position to acquire and retain substantial personal assets in addition to land.

In this case the spouse and children are Philippine citizens and presumably even if there was an established custom for distribution of assets of a deceased, Chamorro or Carolinian, that custom would apply only to persons of those cultures.

The decedent, Eduardo C. Refugia, was married to Irinea E. Refugia and had four children by her. In addition, he is the father of Eden Grace Refugia by a woman not his wife.

In light of the absence of statutory direction and common law as expressed in the Restatement of the Law (1 TTC 103), the court must determine the pattern of descent and distribution of personal assets where the deceased was intestate and survived by a widow and legitimate and illegitimate children.

First, as to the illegitimate child, the common law as developed from England and carried over to the United States established that in the absence of any statute conferring rights of inheritance upon them, illegitimate children are without capacity to inherit from or through either parent. 10 Am Jur 2d, Bastards, §146 and cases cited at footnotes 20 and 2. Since the Northern Mariana Islands has no such statute, it appears, at first blush, that decedent's daughter, Eden Grace Refugia, cannot share in the estate.

The harsh result of treating an illegitimate child as being nullius filius or a non-person has recently concerned the courts.

222

In 1968 the United States Supreme Court rendered its decisions in *Levy v Louisiana*, 391 U.S. 68, 88 S. Ct. 1509, 20 L. Ed. 2d 436 and *Glona v American Guarantee & Liability Ins. Co.*, 391 U.S. 73, 88 S. Ct. 1515, 20 L. Ed. 29 441, which held it was a violation of the equal protection clause of the Fourteenth Amendment to deny to illegitimate children the right to maintain an action for their mother's wrongful death or to deny a mother the right to recover for the wrongful death of her illegitimate children.

Of importance here is the statement in *Levy v Louisiana*, supra, that illegitimate children are humans, they are not "non-persons" and therefore they are clearly persons within the meaning of the provision of the Fourteenth Amendment that no state shall deny to any "person" within its jurisdiction the equal protection of the laws.

The effect of the *Levy* and *Glona* decisions has caused many state courts to strike down statutes discriminating against illegitimate children. 38 ALR 3d 619 et seq. Essentially, these courts held that the classification of illegitimacy by statute, where no action, conduct, or demeanor of the illegitimate children is relevant to their status of illegitimacy, is prohibited. It would appear to follow that to allow such a discriminating classification by applying the English common law is also prohibited. The court in *Levy v Louisiana* at 88 S. Ct. 1511 asked: "Why should the illegitimate child be denied rights merely because of his birth out of wedlock?" The answer is simply that there is no reason for it.

Article 1, Section 6 of the Constitution of the Northern Mariana Islands provides:

> No person shall be denied the equal protection of the laws. No person shall be denied the enjoyment of civil rights or be discriminate against in the exercise thereof on account of race, color, religion, ancestry, or sex.

Therefore, it is held that Article I, Section 6 of the Constitution of the Northern Mariana Islands prohibits the disinheritance of decedent's illegitimate daughter. She shall share in the same proportion as the legitimate children of the deceased.

Last, the distribution as between the widow and children must be determined. Until statutory provisions are passed by the legislature, the court will distribute estate personal property of an intestate decedent in the following manner:

If the decedent leaves a surviving spouse, and only one child, the estate goes one-half to the surviving spouse and one-half to the child. If the decedent leaves a surviving spouse, and more than one child living, the estate goes one-third to the surviving spouse and the remainder in equal shares to his children by right of representation.

This admittedly arbitrary division is based on the theory that the spouse receives a major share of the estate but if more than one child survives the decedent, a decrease in the widow's share is necessary to adequately provide for the children.

It must be noted that the court does not attempt to answer the many other questions which may arise in the future as to other circumstances which may exist on the

death of the decedent. The court arrives at the above distribution plan for those situations in which the decedent is survived by a spouse and children.

ACCORDINGLY, IT IS ORDERED that in the final decree of distribution, one-third of the estate be distributed to Irinea E. Refugia and two-thirds divided equally among the children of the deceased, to wit: Jerie E. Refugia, Julieta E. Refugia, Edna E. Refugia, Eduardo E. Refugia, Jr., and Eden Grace Refugia.

Counsel for the estate shall prepare the decree of distribution in accordance with this Order.

Dated at Saipan, CM, this **30th** day of October, 1981.

_____
Robert A. Hefner, Chief Judge