331 So.2d 555 (1976)
Virginia S. MOORE
v.
THUNDERBIRD, INC., et al.
No. 10655.
Court of Appeal of Louisiana, First Circuit.
April 12, 1976.
Rehearing Denied May 24, 1976.
Charles R. Moore, Baton Rouge, for appellant.
Kenneth W. Cole, Lafayette, for defendants-appellees Thunderbird, Inc. and Market Ins. Co.
David C. Kimmel, Baton Rouge, for defendants-appellees Elizabeth Charlene St. Angelo and Johnny Raymond St. Angelo.
Before LANDRY, COVINGTON and PONDER, JJ.
LANDRY, Judge.
This appeal by plaintiff (Appellant) presents the single issue of whether a father may recover damages for the wrongful death of his biological illegitimate child. Appellant, mother of her deceased illegitimate daughter, Karen Antoinette Vidrine, brings this action seeking damages, individually and as assignee of the rights of the child's biological father, Anthony Gus Vidrine, for the child's alleged wrongful death by drowning at a breach resort operated by defendant Thunderbird, Inc., the insured of defendant, Market Insurance Company. Also made defendants herein were Mr. and Mrs. St. Angelo, who accompanied the deceased child to the resort. Judgment was rendered below in favor of Appellant on her personal action against all defendants. No appeal has been taken therefrom. Judgment was also rendered below in favor of defendants Thunderbird, Inc., and its said insurer, sustaining *556 said defendants' exception of no right of action and dismissing that portion of Appellant's claim predicated upon assignment of the rights of the biological father of the child. From this latter judgment Appellant appeals.
It is conceded that only the stated question of law is involved herein. For purposes for their exception, defendants Thunderbird, Inc. and Market Insurance Company concede that Anthony Gus Vidrine is the biological father of the child in question.
Prior to certain recent decisions by the United States Supreme Court, our jurisprudence was well established to the effect that parents of illegitimate children were without legal right to recover damages for the death of such offspring. Lynch v. Knoop, 118 La. 611, 43 So. 252; Cheeks v. Fidelity & Casualty Co. of New York, La. App., 87 So.2d 377; Scott v. La Fontaine, La.App., 148 So.2d 780. The cited cases held in substance that La.C.C. Article 2315, which allows recovery for wrongful death, applies only to legitimate relations.
However, the foregoing Louisiana rule was nullified by Levy v. Louisiana, 391 U. S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436, which held in effect that denial of an illegitimate child's right to sue for damages for the death of the child's biological mother, amounts to denial of equal rights guaranteed by the Federal Constitution.
Glona v. American Guarantee & Liability Insurance Company, 391 U.S. 73, 88 S. Ct. 1515, 20 L.Ed.2d 441, rendered on the same day as Levy, above, held that the mother of an illegitimate child is entitled to sue for damages for the death of such an offspring.
Subsequent to Glona, above, Weber v. Aetna Casualty & Surety Company, 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768, held that dependent unacknowledged illegitimate children have a right to workmen's compensation benefits, pursuant to Louisiana law, for the death of their biological father.
Except as hereinafter required to answer Appellees' argument that the position of the biological father of an illegitimate child is different from that of the biological mother, we deem it unnecessary to discuss the moral and legal concepts which constitute the rationale of Levy and Glona, above. It suffices to state that these authorities found constitutional bases for the proposition that an illegitimate child may recover for the death of his biological mother and that a biological mother may recover damages for the death of her illegitimate child.
Our own Supreme Court has recognized the binding effect of Levy, Glona and Weber, above. In Warren v. Richard, La., 296 So.2d 813, it was held that an illegitimate child may recover for the death of his biological father, notwithstanding the child is deemed by state law to be the legitimate child of another man.
In rejecting Appellant's demands under the assignment granted in this instance, the lower court relied upon Honeycutt v. City of Monroe, La.App., 253 So.2d 597, which was an action by a father and mother for damages for the death of their twelve year old illegitimate child who drowned in a municipal swimming pool. The action of the father was dismissed upon an exception of no right of action based on a lack of proof of paternity. In this instance, the father relied upon Glona, above, as authority for the rule that a father may sue for the wrongful death of his illegitimate child. In answering this contention, the Honeycutt decision states:
". . . It is urged on behalf of Page that the holding in Glona v. American Guarantee & Liability Insurance Company, 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed. 2d 441 (1968), applies equally to the natural father as to the natural mother of an illegitimate.

*557 Glona stands for the proposition that where plaintiff is `plainly' the mother of an illegitimate child, the fact of its illegitimacy is no bar to her recovery for the wrongful death of her child. Even if we should agree with plaintiff Page's argument, which we do not, the evidence in the instant case fails to convince us that Oliver Page is `plainly' the father of Stanley.
It is also argued that if the child was indeed the child of Oliver Page `in the biological and in the spiritual sense, and if the court finds that Oliver Page loved, cared for, supported and educated the deceased child, he has suffered a wrong which is compensable in damages under Article 2315', citing Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968).
Having found the evidence insufficient to prove Page was the `biological' father of Stanley, we conclude the cited case is inapplicable to the present facts, which finding precludes the necessity of passing on his negligence. Furthermore, Levy was a suit by the illegitimate child to recover for the wrongful death of the natural mother, and the language employed in the preceding paragraph is used in the United States Supreme Court opinion to describe the nature of the wrong inflicted upon the child." (Emphasis added to phrase "which we do not")
It is contended the cited language from Honeycutt, above, rejected the argument that Glona, above, affords a natural father a right of action for the death of an illegitimate child. However, we find, in view of the court's holding that the father had failed to prove paternity, the quoted language appears to be dicta. We do not consider Honeycutt, above, to have held that Glona, above, does not apply to the biological father of an illegitimate child. We are of the view that the Glona reference to claimant as "plainly the mother," was intended merely to require proof of maternal relationship.
Our own circuit has recognized and applied the Glona rule in a suit by a mother seeking damages for the death of an illegitimate child. See Miles v. City-Parish Government of East Baton Rouge Parish, La.App., 219 So.2d 320.
Glona, above, expressly rejected the contention that the cause of illegitimacy would be served by allowing a mother to recover for the death of her illegitimate child. We find Glona, above, has at least impliedly held the immorality of the mother of an illegitimate child does not bar the mother's right to sue for the child's death. We mention these aspects of Glona, above, because Appellees contend the difference between the relationship of a biological father to his illegitimate child is generally so different from that of the mother as to justify denying the father the right to recover damages for the child's death. Appellees suggest that the case of the mother is different because there can be no doubt as to who is the mother of a child; the mother carries the child during gestation, and in most cases the mother bears the burden of rearing, supporting and educating the illegitimate. In this regard, Appellees suggest that in many cases the biological father is not known and it frequently occurs that the father had no part in the child's rearing and makes no contribution to the child's support.
We believe Glona, above, predicates the mother's recovery upon relationship, albeit illegitimate. In this connection we find no distinction between the relationship of the father and that of the mother. Glona, above, does not deprive the mother of recovery for the immorality of illegitimate conception. We believe that to apply a different rule to the father would deprive him of the equality of rights guaranteed by the Federal Constitution. The father is no more nor less guilty of immorality than is the mother.
*558 We believe the issues of support and contact with the child are properly concerned with proof of paternity and the amount of damages to which a biological father may be entitled, and not to the basic right of the father to recover as a matter of law. We conclude Appellant is entitled to proceed with her assigned right of action and is entitled to recover whatever damages are due her assignor.
IT IS ORDERED, ADJUDGED AND DECREED, that the judgment of the trial court sustaining the exception of no right of action filed by defendants Thunderbird, Inc. and Market Insurance Company, in opposition to Appellant's claim for damages pursuant to assignment from Anthony Gus Vidrine, be and the same is hereby annulled, reversed and set aside and judgment rendered herein overruling and dismissing said exceptions and remanding this case to the trial court for further proceedings consistent with the views herein expressed, all costs of this appeal to be paid by Appellees Thunderbird, Inc., and Market Insurance Company.
Reversed and remanded.