WATKINS, Judge.
John Morris Cook filed the present action against Sager Brown School, the State of Louisiana, and XYZ Insurance Company for the wrongful death of John Morris Howard, of whom plaintiff contends he is the biological father. Sager Brown School filed an answer denying liability, and later Sager Brown School and their insurer, The Atlantic Companies filed a peremptory exception of no right of action, contending that John Cook was not the biological father of decedent. The trial court after trial on the peremptory exception of no right of action sustained the exception. John Morris Cook appeals. We reverse and remand.
John Morris Howard was born out of wedlock to Mary Howard on December 1, 1967, in New Orleans, Louisiana. He was generally reared by his maternal great-grandparents, Mr. and Mrs. Lawrence Bes-six. On May 27,1978, John Morris Howard was placed in Sager Brown School where he drowned about two months later, allegedly as the result of culpable conduct on the part of Sager Brown School.
In a deposition taken after the wrongful death suit was filed, the mother, Mary Howard, stated that Lucas (sic) Spears, Jr. was the biological father of John Morris Howard. At trial on the exception of no right of action, Mary Howard conversely testified that John Morris Cook was the child’s biological father. The trial court found that although the evidence preponderated that John Morris Cook was the biological father of John Morris Howard, John Morris Cook was not “plainly” the father of the child, as was the test the court stated we applied in Moore v. Thunderbird, Inc., 331 So.2d 555 (La.App. 1st Cir.1976). We annex the reasons for judgment of the trial court in the present case for a statement of the facts, which we find free from error.
We agree with the trial court that plaintiff did prove he was the father by a preponderance of the evidence. However, we must differ with the trial court in its applying a “plainly” the father test as a requisite for proof of paternity in a wrongful death case, as opposed to a preponderance of the evidence test. We find no support in law for applying a more demanding standard of proof in this matter.
It is quite true that Glona v. American Guarantee and Liability Insurance Co., 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968) stated as a matter of equal protection the biological mother of a child born out of wedlock must be allowed to bring an action for wrongful death if she is “plainly” the mother of the child. However, we do not consider Glona as establishing a rule or test for burden of proof, but rather, Glona uses the word “plainly” in a less formal sense. Any indication that “plainly” is a test established for burden of proof found in Moore v. Thunderbird, Inc., supra, and in Honeycutt v. City of Monroe, 253 So.2d 597 (La.App.2d Cir.1971) must be regarded as purely dicta. We hold that the test applied in most civil cases, the preponderance of the evidence test, applies to a determination of paternity in a suit brought by the alleged father of an illegitimate child for that child’s wrongful death.
Accordingly, the judgment of the trial court is reversed, the exception of no right of action is overruled, and the case is remanded for further proceedings. The assessment of costs to be determined upon final judgment.
REVERSED AND REMANDED.
APPENDIX
JOHN COOK
VERSUS
SAGER BROWN SCHOOL
No. 58579
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARY
STATE OF LOUISIANA
JULY 27, 1984
HONORABLE C. THOMAS BIEN-VENU, JR., JUDGE PRESIDING
*983 BY THE COURT:
Defendant brings this Exception of No Right of Action contending that the plaintiff is not the proper party to bring this survival and wrongful death action as a result of the drowning death of a ten year old child, John Maurice Cook.
The evidence adduced at the hearing on July 26th, 1984 was designed to determine whether plaintiff was in fact the biological and legal father of this child. The child was born to Mary Howard before she married plaintiff. Her testimony is completely discredited in that her testimony at the trial is diametrically opposed to that given at her deposition. Some of her testimony ' at the trial or hearing even contradicted itself in certain respects. She admittedly has been a drug abuser, has had mental health problems and has been convicted of crimes. Her reasons given for lying when she says she lies and telling the truth when she says she is telling the truth are not even persuasive. It suffices to say that she is of no help to the Court in determining who is the father of the child. At the hearing Mary Howard said that plaintiff was the father, and he testifies that he is. At the deposition Mary Howard testified that Luther Spears was the father and at the hearing he said he was the father. The other testimony is to the effect that either could have been the father. Mr. and Mrs. Lawrence Bessix, Sr., the child’s great grandparents, who essentially raised Mary Howard and then the child, testified that Luther Spears could have been the father, that Mary Howard and Luther Spears always claimed that he was the father and that plaintiff never acknowledged being the father. Doris Craig was only able to testify that at some time in the past plaintiff and Mary Howard lived together, so that it was possible for them to conceive a child.
While plaintiff and Mary Howard were married and living together, they petitioned the Family Court of East Baton Rouge for custody and at the hearing plaintiff testified that he was in fact the father of the child. That Court retained custody in the Bessixes but gave petitioners an approximately three month period of time in which to stabilize their lives, at which time he would reconsider the question of custody. The record in that case reflects that plaintiff and Mary Howard ran into difficulties during the interval, separated physically and that Mary Howard informed the Court that she waived her right to the second court hearing. There is evidence, although disputed, that plaintiff made efforts thereafter to visit with the child, but it must be remembered that during that time the Bes-sixes also had custody of another child, Alicia, born of the marriage between plaintiff and Mary Howard, and undoubtedly their child. It could have been that whatever efforts made to visit were primarily directed toward visiting with Alicia.
Mary Howard settled her action with the same defendants for the same cause of •action and in the release she signed, said that the child had never been acknowledged by his father, but did not name who that person was.
This Court feels that the evidence preponderates, though barely, that plaintiff is the biological father. Indeed, Mary Howard chose to give the child the same first and middle names as plaintiff. As this Court appreciates the law, however, a preponderance of the evidence is not the correct standard to apply in a case such as this. It would be if the roles were reversed, that is, if the child were claiming that plaintiff was his father, then he would only have to prove that claim by a preponderance of the evidence. Succession of Washington, 308 So.2d 892, La.App. 2nd Cir., 1974. When an alleged parent seeks to prove paternity, however, the standard is different. It seems that the First Circuit Court of Appeals, by which this Court is bound, has adopted the standard that to succeed, plaintiff must prove that he is “plainly” the father of the child. Moore v. Thunderbird, Inc., 331 So.2d 555, La.App. 1st Cir., 1976; Honeycutt v. City of Monroe, 253 So.2d 597, La.App. 2nd Cir., 1971; Glona v. American Guarantee and Liability Insurance Company, 391 U.S. 73, 88 *984 S.C. 1515, 20 L.Ed.2d 441, 1968. The evidence in this case falls short of meeting that burden. While this Court feels that the evidence is more likely so than not that plaintiff is the father of the child, it is certainly not plain to this Court that he is. It might well be otherwise.
Plaintiff can take no comfort from Article 198 of the Civil Code, which says that illegitimate children are legitimated by the subsequent marriage of their father and mother whenever the latter have formally or informally acknowledged them. It is true that plaintiff married Mary Howard subsequent to the birth of the child and it is true that plaintiff acknowledged the child at least on one occasion, at the hearing in Baton Rouge. The Article is premised, however, on proof of biological affiliation. The article is premised on the marriage of the father and mother, which obviously means the biological parents. If the article read “man and woman” rather than “father and mother”, then plaintiff would prevail, for then the marriage of any man to the mother of the child, coupled with an acknowledgement, would legitimate the child. The Legislature obviously intended, however, that it be the father of the child who marries the mother and “father” in this context can only mean biological father, which is a matter of fact which must be proven. If this Court is incorrect in its application of the law, then plaintiff is entitled to bring this action, because the preponderance of evidence is in his favor. In view of the above comments, however, the Exception of No Right of Action will be sustained and plaintiffs petition will be dismissed at his cost.
The Court directs that these oral reasons be transcribed and a copy of same forwarded to counsel. A judgment consistent herewith will signed upon presentation.
Franklin, Louisiana
July 30, 1984
A true and correct transcription of reasons for judgment.
/s/ Louise F. Giroir
Louise F. Giroir