DOMENGEAUX, Judge.
This appeal arises out of a suit for the wrongful death of an unborn illegitimate child filed by the purported natural father, Edmond Charles, plaintiff, against the defendants, Eastgate Corporation and East-gate’s liability insurer, Liberty Mutual Insurance Company.[1] A jury awarded the plaintiff $20,000.00 for his damages. The defendants appealed the jury verdict and raise two specifications of error. The plaintiff has answered the appeal citing one specification of error.
Edmond Charles, the plaintiff, and Lou Anna Brown lived together without benefit of matrimony for two years prior to the accident which prompted this suit.
The defendant, Eastgate Corporation, was employed by a telephone company solely to lay telephone cable. Several days before the accident the Eastgate Corporation dug a four and one-half inch wide, twenty-four to thirty inch deep trench on the shoulder of a gravel road in front of the residence of the plaintiff and Lou Anna Brown. A telephone cable was laid down in the excavation, and the trench was then backfilled and packed by a tractor rolling a tire over the refilled furrow. No warning devices were placed upon the construction site to warn of the backfilled trench.
On December 17,1981, Lou Anna Brown, while driving the plaintiffs van approached the residence and attempted to park on the shoulder of the gravel road. The residence did not have a driveway. While she gradually veered onto the shoulder so as to park parallel to the roadway the right wheels of the van sank into the trench where the cable had been placed.
There is some dispute as to the abruptness with which the auto came to a stop and the severity of the impact between Ms. Brown and the vehicle’s interior. What is certain is that plaintiff found Ms. Brown unconscious and slumped over the steering wheel of the auto. An ambulance was summoned and Ms. Brown was transported to the hospital.
In the ensuing months Ms. Brown complained of and was treated for pain to her neck, back, and chest, as well as for abnormal vaginal bleeding allegedly caused by a traumatic miscarriage resulting from the auto accident. Approximately one year from the date of the accident Lou Anna Brown died.
On December 17, 1982, Edmond Charles filed suit alleging that he was the progenitor of the fetus which Lou Anna Brown was carrying and that as a result of the accident and the wrongful death of the fetus he was deprived of the pleasures of raising that child.
A jury trial was held and at the close of the trial the jury was presented with eight interrogatories to assist in the formulation of their verdict. The jury found that at the time of the accident Lou Anna Brown was pregnant, that Edmond Charles was the father of the fetus, that the accident was caused solely by the negligence of the Eastgate Corporation and that the accident was the cause of the fetus’ death. Based upon these factual findings the jury awarded Edmond Charles $20,000.00 in damages.
The defendants timely moved for a hew trial and a judgment non obstante veredic-to which were denied by the court.
*256 The defendants have appealed the jury verdict and raise two specifications of error; the plaintiff has answered the appeal seeking additional damages.
Specification of errors:
1. The trial court erred in failing to grant a directed verdict in favor of defendants and later in failing to grant a judgment notwithstanding the verdict in favor of defendants in that the evidence adduced at trial was simply insufficient to support a verdict by the jury.
2. The trial court erred in failing to grant a mistrial and later in failing to grant a new trial based upon plaintiff's attorney’s illegal and improper argument to the jury.
3. The jury erred in failing to award a higher amount to Edmond Charles for the loss of his unborn child.
SPECIFICATION OF ERROR NO. 1
The defendants aver that the evidence adduced at trial was insufficient to support a verdict by the jury. Essentially, the defendants argue that the testimony was inadequate to prove that Edmond Charles was the father of the alleged fetus or that Lou Anna Brown was indeed pregnant.
Mr. Charles testified that prior to this accident he and Lou Anna Brown had lived together for two years, that during this period they had slept together every night, and to his knowledge she was not intimate with anyone else. He further deposed that he had personal knowledge that she had not menstruated in three months, that as a couple they had no children and that he had a desire to rear a child which he had fathered with Ms. Brown.
Mr. Charles gave additional testimony that as the ambulance attendants transported Ms. Brown from the scene he noticed blood on the seat of the van. Plaintiff attests that on the evening of the accident, Ms. Brown was laying on the sofa and when she arose, there was blood on the sofa and a mass of either flesh or blood “full of hair” fell to the floor.
Ms. Brown was examined by Dr. John Tassin, on December 18, 1981, the day following the accident. He testified that on that visit Ms. Brown did not mention any vaginal bleeding nor the alleged aborted fetus.
Doctor Tassin again examined Ms. Brown on December 22,1981. On this visit is the first disclosure Ms. Brown makes of her vaginal bleeding and her belief that she had been pregnant. She informed Doctor Tassin that she had not had a period since September 18,1981, and that since the accident she had been passing blood and clots. Doctor Tassin noted that there was blood on the vaginal wall and that a pregnancy test done on Ms. Brown indicated negative. Doctor Tassin testified that forty-eight hours after a miscarriage a pregnancy test would read negative. Doctor Tassin stated that Ms. Brown’s uterus was a normal size and that a uterus “could” be normal five days after miscarriage.
Doctor Tassin continued to treat Ms. Brown for whiplash, and on April 27th, he had her go to Charity Hospital for a dilation and curettage (commonly referred to as a “D & C”) to treat the vaginal bleeding. After the D & C was performed Ms. Brown was diagnosed as having menorrhagia or abnormal vaginal bleeding.
Doctor Tassin informed the court that there were two possible causes for Ms. Brown’s menorrhagia, either she had not passed all of the placenta or she had a tumor.
Doctor Tassin stated that a trauma such as an auto accident can cause a miscarriage. He testified that it was “possible” that Ms. Brown was pregnant and had suffered a miscarriage.
In response to the plaintiff’s attorney’s hypothetical, Doctor Tassin stated that based upon a three month time span with no menstrual bleeding, the accident, and the abnormal bleeding it was “quite possible” that Ms. Brown was pregnant at the time of the accident and had suffered a miscarriage.
On cross-examination Doctor Tassin stated that his notes indicated that Ms. Brown had admitted to him that she had had a tubal ligation. Both Doctor Tassin and Mr. *257 Charles attested that they did not see a scar on Ms. Brown’s abdomen which would have indicated that a tubal ligation would have been performed. Normally a ligation of the fallopian tubes requires a rather large incision which leaves a noticeable four inch scar. Doctor Tassin did however indicate that as of 1981 some physicians were performing the ligation with a laparo-scope which would require a small incision which would leave a diminutive and incon-spicious scar. The doctor did premise his remarks about Ms. Brown’s disclosure of the tubal ligation by stating that Ms. Brown may have misunderstood his questions.
Doctor Tassin stated that if Ms. Brown had indeed had a tubal ligation there was little probability that she was pregnant at the time of the accident.
On further cross examination, Doctor Tassin noted that Ms. Brown informed him that prior to the accident two D & Cs had been performed on her. Doctor Tassin opined that this history would indicate to him prior gynecological problems.
Doctor Tassin also expressed a belief that after examining Ms. Brown on several occasions and finding nothing abnormal in the uterus that the bleeding had been caused by a tumor. Again Doctor Tassin premised his opinion, by stating on redirect that if the placenta stays in the womb over a long period of time it is possible that it may become cancerous.
Again by way of a hypothetical, Doctor Tassin stated that based upon a tubal ligation, prior gynecological problems, nine to twelve months of abnormally constant vaginal bleeding, and three months in Charity Hospital culminating in death, it was possible that a tumor caused the bleeding.
Before an appellate court can disturb factual findings by a jury, it must be determined that the finding of fact is manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Although we may not have decided this case the way the jury ultimately did, we feel constrained from reversing the trial court. The testimony of Doctor Tassin when coupled with the lay testimony furnishes a reasonable factual basis for the jury’s verdict that Ms. Brown was pregnant, that Mr. Charles was the child’s father, and that the accident caused the unborn child’s death. This Court’s authority as a reviewer of fact does not include the prerogative of second guessing the finder of fact. Thus we affirm the jury’s findings of fact.
SPECIFICATION OF ERROR NO. 2
During the early pleading stage of this lawsuit, five of Ms. Brown’s children by a previous union intervened in this lawsuit to recover Ms. Brown’s survival damages and their own wrongful death claims. That portion of the lawsuit was ultimately settled.
On opening argument counsel for both plaintiff and defendant mentioned the fact that Lou Anna Brown had died, that her children had intervened in the suit, and that that case had been resolved. The attorneys indicated that these factual references were made so as to explain to the jurors Ms. Brown’s absence.
However, during closing arguments, counsel for plaintiff in making reference to Ms. Brown’s children’s claim stated, “[t]hat matter was disposed of. Settled. So she and her estate were taken care of or that was disposed of.”
Defense counsel moved for a mistrial based upon plaintiff’s counsel’s reference to the status of the case involving the children of Lou Anna Brown. Defense counsel argued both at trial and on appeal that the statement was inadmissible as well as prejudicial in that it suggested that the defendant stipulated to liability in the children’s case.
The district judge refused the mistrial and chose to admonish the jury to disregard what they had heard about the settlement of Lou Anna Brown’s case.
Although we note that the plaintiff’s counsel’s remarks were prejudicial in that they referred to facts which were not *258 in evidence, we feel that the district judge’s admonition was a sufficient curative measure in this instance.
Both counsel mentioned that the case had been “resolved” on opening argument, while counsel for plaintiff used the word “settled” in closing. We feel that in the mind of a lay person there is little distinction between the two terms, and to a mind not trained in legal niceties such hair splitting only amounts to semantics.
We feel that this situation is governed by the Supreme Court’s rationale and holding in Temple v. Liberty Mutual Insurance Company, 330 So.2d 891 (La.1976). In Temple, the plaintiff’s counsel, during the course of his rebuttal argument to the jury, “made outright appeals to prejudice against defendant insurer, characterizing it as soulless and devoid of feeling, charging unfairness and oppression in its dealing with plaintiffs, and even suggesting to the jury that it could punish the insurer through its verdict.”
The district judge admonished the jury that the arguments of counsel were not evidence, that they could not award damages for punishment, and that the plaintiffs and defendant insurer should be treated as equals.
The Supreme Court held that an admonition was the sufficient corrective measure to conteract the prejudicial effect of the plaintiff’s rebuttal argument. In so doing the court noted:
“[c]ounsel has great latitude in argument before a jury, subject, however, to regulation and control by the court, whose duty it is to confine argument within proper bounds. The trial judge denied defendants’ motion for a new trial, which alleged, inter alia, that the prejudicial argument of plaintiffs’ counsel warranted the granting of a new trial. The trial judge is in a better position than an appellate court to determine possible prejudicial effects resulting from counsel’s argument before a jury. Therefore, his finding that counsel for plaintiffs’ argument was not so prejudicial as to warrant the granting of a new trial should be accorded much weight.”
We therefore hold that the district judge did not err when he corrected the plaintiff’s attorney’s error by an admonition rather than by granting a new trial.
SPECIFICATION OF ERROR NO. 3
Plaintiff contends that the jury should have awarded more than $20,000.00 for the loss of his unborn child. His only argument on appeal is: “[ejonsidering the high awards for death of children which range from $50,000.00 to $75,000.00 per parent per child, it would seem that the loss of an unborn child should have a higher value than $20,000.00. Plaintiff contends that he should have been awarded $40,000.00 to $50,000.00.”
“Before an appellate court can disturb a quantum award, the record must clearly reveal that the trier of fact abused its discretion in making the award. An award made in the trial court may not be modified unless it is unsupported by the record. The appellate question is not whether a different award may have been more appropriate, but whether the trial court's award can be reasonably supported by the record. Moreover, the appellate function in reviewing quantum is limited to raising inadequate awards to the lowest amount the trial court could have reasonably awarded, and lowering excessive awards to the highest amount the trial court could have reasonably awarded.
The appropriate procedure for testing whether the jury abused its discretion by making an excessive award can be supported by the interpretation of the evidence most favorable to the plaintiff which reasonably could have been made by the jury. The converse of this rule is also true: in determining whether the trier of fact abused its discretion by making an inadequate award, the evidence must be viewed in the light most favorable to the defendant. Further, we note the cautionary language of Reck v. Stevens, supra, to the effect that an appellate court must reach a determina *259 tion that the trier of fact abused its discretion before a resort to prior awards is appropriate for purposes of determining what would then be an appropriate award.”
(Citations omitted) Norris v. Pool Well Service, Inc., 460 So.2d 1117 (La.App. 2nd Cir.1984).
Here, the record does not contain any evidence by expert witnesses which the jury could have considered in making an award for the wrongful death of an unborn child. The only mention of an award amount is made during the plaintiffs closing argument.
From the modicum of proof which the plaintiff offered the jury as to an appropriate award, we are unable to conclude that the jury clearly abused their discretion with regard to this plaintiff.
For the above and foregoing reasons the verdict of the district court is affirmed. Costs on appeal to be assessed two-third to appellant, Liberty Mutual Insurance Company, and one-third to appellee, Edmond Charles.
AFFIRMED.

. The propriety of a natural father’s right to recover for the wrongful death of an unborn illegitimate child was not made an issue in this case. However, we note that although it is well settled that parents may recover for the wrongful death of their unborn legitimate children, there is only case which allows a natural father to recover for the wrongful death of an illegitimate child. See Moore v. Thunderbird, Inc., 331 So.2d 555 (La.App. 1st Cir.1976).