**Judy MANUEL, Relator,**

v.

**Honorable Rose SPECTOR, Respondent.**

**No. 04-86-00099-CV.**

Court of Appeals of Texas,
San Antonio.

May 28, 1986.

Malcolm C. Halbardier, San Antonio, for relator.

John Specia, San Antonio, Diane Garcia, San Antonio, for respondent.

Before CADENA, C.J., and CANTU and TIJERINA, JJ.

## ON PETITION FOR WRIT OF MANDAMUS

CANTU, Justice.

This is an original proceeding wherein the relator, Judy Manuel, sought a writ of mandamus directing the respondent, the Honorable Rose Spector, judge of the 131st Judicial District Court of Bexar County, to rescind her order compelling the relator to submit to blood testing in a district court proceeding under Chapter 13 of the Texas Family Code. *See* §§ 13.01 *et seq.* [1]

The real party in interest, S.H., is the mother of J.B.D. Acting as next friend of J.B.D., S.H. instituted an action to establish the paternity of J.B.D. Judy Manuel, the relator, and mother of J.B.D.'s putative father, Brian K. Dibrell (Dibrell), was joined as a party in this law suit.

J.B.D. was born on April 28, 1983. Dibrell and S.H. were never married and J.B.D. was never legitimated by Dibrell. Dibrell was killed in an automobile accident on May 11, 1983, thirteen days after J.B.D.'s birth.

The amended original petition filed by S.H. after the death of Dibrell seeking to establish paternity, named Judy Manuel and Arthur James Mosier, Jr., as the biological parents of the putative father, Brian K. Dibrell. S.H. sought to be named managing conservator of J.B.D., and to establish the parent-child relationship between J.B.D. and Dibrell.

S.H. also requested the court to order S.H., Manuel, Mosier, and J.B.D. to submit to blood tests in an attempt to establish paternity pursuant to Chapter 13 of the Texas Family Code.

---

1. All citations to Code sections herein refer to the Texas Family Code unless otherwise noted.

On January 22, 1986, Petitioner's Motion for Parties To Submit To Blood Tests was heard by the Honorable Rose Spector sitting as the 45th Judicial District Court of Bexar County. Judge Spector entered an order requiring the parties to appear for blood testing on the 26th day of February, 1986. A written order was signed February 24, 1986. Mosier, S.H., and J.B.D. all appeared and were tested. Manuel did not appear.

However, prior to the date set for the tests, Manuel filed an amended answer in the suit alleging that the trial court was without jurisdiction to order her to take the test. On February 25, 1986, we granted relator's Motion for Leave to File Petition for Writ of Mandamus, and issued a restraining order prohibiting respondent herein from carrying out the order directing relator to appear for blood testing pending this court's determination into the propriety of issuing the writ of mandamus.

In her petition for writ of mandamus, relator argues that the entering of an order to force her to submit to blood testing pursuant to either Chapter 13 of the Texas Family Code or Rule 167a of the Texas Rules of Civil Procedure is a clear abuse of discretion, since neither provision authorizes a court to order an alleged paternal grandmother to submit to such tests. Relator also argues that she is not liable in the capacity in which she has been sued and that there is, therefore, a defect of parties.

S.H., joined by the attorney ad litem representing J.B.D's interests, recognize in their briefs before this Court that the "gravamen of the instant case is whether or not a suit for paternity may be filed after the death of the alleged biological father." However, they argue that the narrow issue before this Court is whether a writ of mandamus will lie in this cause.

■ A writ of mandamus is an extraordinary remedy which is available only where the relator has a clear right to relief and there is no other adequate legal remedy available to rectify the wrong. *State v. Walker*, 679 S.W.2d 484 (Tex.1984). Thus,

mandamus will lie to compel a respondent to perform a ministerial duty clearly defined by law, *Turner v. Pruitt*, 161 Tex. 532, 342 S.W.2d 422 (1961); to compel an act requiring the use of discretion without controlling the particular manner in which the discretion is to be exercised, *Gibson v. Blanton*, 483 S.W.2d 372 (Tex.Civ.App.—Houston [1st Dist.] 1972, no writ); or to correct a clear abuse of discretion. *State v. Sewell*, 487 S.W.2d 716 (Tex.1972). A clear abuse of discretion occurs when a duty is clearly mandated by statute or the rules of procedure; or when the court acts without any authority to do so. *See West v. Solito*, 563 S.W.2d 240 (Tex.1978); *State v. Sewell, supra.*

■ Where another remedy is available and adequate, mandamus will not lie, except in the case of a gross abuse of discretion. *Jampole v. Touchy*, 673 S.W.2d 569 (Tex.1984). Furthermore, the availability of other remedies does not prevent the issuance of the writ to set aside a void order of a trial court. *See Dikeman v. Snell*, 490 S.W.2d 183 (Tex.1973); *Buttery v. Betts*, 422 S.W.2d 149 (Tex.1967). Additionally, relief by mandamus is appropriate from non-appealable interlocutory orders where a serious denial of a right will result if the remedy is by appeal. *Brod v. Baker*, 591 S.W.2d 457 (Tex.1979).

In the case before us, the trial court ordered the relator to submit to blood tests in order to aid in determining paternity between relator's deceased son and his alleged child. Relator argues that this order is a clear abuse of the trial court's discretion, because the court has no authority to enter such an order.

The initial or threshold question, however, is whether an action to establish paternity may be brought after the death of the putative father.

At common law all proceedings seeking to establish paternity abated upon the death of the putative father.

Our Family Code does not provide for abatement of the proceeding upon the death of the putative father although it

does place a limitation period upon the child to bring the action on or before the second anniversary of the day the child becomes an adult. *See* § 13.01.

Generally, it may be said that legitimization is a creature of statute, and where the statute fails to expressly provide for the survival of an action to establish paternity of an illigitimate child, an action brought after the death of the putative father does not survive the death of the father. *See* Annotation—*Death of Putative Father as Precluding Action for Determination of Paternity or for Child Support*, 58 A.L.R.3d 188 (1974).

The paternity section of the Family Code is in derogation of the common law. Under the common law rule statutes in derogation of the common law were required to be strictly construed. Under such construction the paternity section of the Family Code would not provide for survival of the cause of action and abatement would follow.

However, our legislature has specifically provided that the rule of the common law that statutes in derogation thereof shall be strictly construed shall have no application to Texas statutes and that the provisions thereof shall be liberally construed with a view to effect their objects and to promote justice. TEX.REV.CIV.STAT.ANN. art. 10, *repealed by* Acts 1985, 69th Leg., p. 3361, ch. 479, § 224, eff. Sept. 1, 1985; *see now* TEX.GOV'T CODE ANN. § 312.006 (Vernon pamp.1986).[2]

■ Social and remedial legislation will be construed liberally to effectuate its purpose. *Braugh v. Corpus Christi Bank & Trust*, 605 S.W.2d 691 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.); *Texas Employment Commission v. Ryan*, 481 S.W.2d 172 (Tex.Civ.App.—Texarkana 1972, no writ).

Applying a liberal construction to achieve the intent of the legislature and to promote

justice we are not compelled to hold that abatement necessarily follows from the death of the putative father. An action to establish paternity under our family code is not entirely limited to the establishment of a right of support. Rather there is evidence of a clear intent to create a status: the parent-child relationship, which confers upon the illegitimate child all the rights and privileges of a child born to the father and mother during marriage. *See* § 13.09.

While the action for support terminates upon the death of the party obligated to provide support, *Hutchings v. Bates*, 406 S.W.2d 419 (Tex.1966), there exists no sound reason why the legitimization process should likewise terminate upon the death of the putative father. The current trend in modern law favors according children born out of wedlock the same legal status as other children. *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977); *Weber v. Aetna Casualty & Surety Co.*, 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972); *Glona v. American Guarantee & Liability Insurance Co.*, 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968); *Levy v. Louisiana*, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968).

■ We find the same concern implicit in our paternity statutes. Accordingly, we hold that an action to determine the fact of paternity under Chapter 13 of the Family Code may be maintained after the death of the father. Thus we must next decide whether the trial court abused its discretion in ordering the relator to submit to blood tests to aid in determining paternity between Jarrett and Dibrell.

■ The petitioner in the paternity action sought the blood tests under the authority of Chapter 13 of the Family Code and/or Rule 167a of the Texas Rules of Civil Procedure.

Rule 167a(a) provides in pertinent part:

> (b) The common law rule requiring strict construction of statutes in derogation of the common law does not apply to the Revised Statutes.

---

**2.** Section 312.006 provides:
 (a) The Revised Statutes are the law of this State and shall be liberally construed to achieve their purpose and to promote justice.

When the mental or physical condition (including the blood group) of a party, ... is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician ...

The primary purpose of this rule is to provide a procedure by which a party whose physical condition is in dispute and is a material issue may be required to submit to an examination by another party to the suit. *C.E. Duke's Wrecker Service, Inc. v. Oakley*, 526 S.W.2d 228 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.). Relator in this case is not a party whose physical condition or blood group is in dispute. Rather it is the blood group of her deceased son which is in controversy and a material issue in the paternity suit. Testing the relator's blood is collateral to the issue before the trial court, and is sought only to aid in determining the controversy.

 Moreover, TEX.FAMILY CODE § 13.02(a) provides that the trial court in a paternity suit "shall order the mother, alleged father, and child to submit to the taking of blood for the purpose of one or more blood tests." There is no authority for a putative paternal grandmother or any other person to be ordered to submit to the taking of blood by this section.[3]

As noted, a paternity suit pursuant to Chapter 13 of the Family Code is a suit to establish a status, that is the parent-child relationship between the child who is not the legitimate child of a man and the child's natural father. TEX.FAMILY CODE § 13.01 (Vernon Pamp.1986). A parent-child relationship is defined as the rights, duties and powers existing between a parent and child. TEX.FAMILY CODE § 11.-01(4) (Vernon 1975). Parent is defined as the mother or a man to whom the child is legitimate. TEX.FAMILY CODE § 11.-01(3) (Vernon 1975).

Thus, the provisions of the Family Code indicate that a paternity suit involves only the mother, alleged father and child. While petitioner herein has attempted to join relator as a party in order to force submission to blood testing, we hold that relator is not a party whom the trial court may order to submit to the taking of blood pursuant to either the Family Code provisions or Rule 167a. Because entry of an order requiring blood testing of the relator is without statutory authority, the entry thereof was a clear abuse of discretion. *West v. Solito, supra; State v. Sewell, supra.*

Judge Spector is ORDERED to rescind her order entered on the 27th day of February, 1986, directing relator to submit to blood testing. Relator's request for writ of mandamus is conditionally granted and will issue only if Judge Spector does not rescind her order requiring relator to submit to blood testing.

CADENA, Chief Justice, concurring.

While I agree with the result, I see no reason for a discussion of the survival of a cause of action to establish paternity.

---

**3.** Section 13.02(b) provides,

An order issued under this section is enforceable by contempt, except that if the petitioner is the mother or the alleged father and refuses to submit to the blood test, the court shall dismiss the suit. If the *respondent is* the *mother or* the alleged *father* and refuses to submit to the blood test, the fact of refusal may be introduced as evidence as provided in Section 13.06(d) of this Code. (Emphasis supplied).

The trial court's order herein further provided: "upon refusal to submit to blood tests, the fact of such refusal may be introduced into evidence as provided in section 13.06 of the Texas Family Code." Section 13.06(d) provides:

Evidence of a refusal by the respondent to submit to a blood test is admissible to show only that the alleged father is not precluded from being the father of the child.

Construing these sections together with the other provisions of the Code, the mother, alleged father and child may be ordered to submit to blood testing. Only if the mother or father is the respondent and refuses to submit to the test, can the fact of refusal be introduced to show that the alleged father is not precluded from being the child's father.