**In the Interest of Kandice Lee GEORGE, a Child.**

**No. 12–89–00156–CV.**

Court of Appeals of Texas, Tyler.

July 31, 1990.

C. Denice Smith, Fort Worth, for appellant.

Don Wheeler, Center, for appellee.

BILL BASS, Justice.

This is an appeal by writ of error brought by Lois E. George, the widow of Myron D. George (hereinafter "Myron"). Mrs. George filed this writ seeking review of an order signed on November 15, 1988, declaring Kandice Lee George (hereinafter "the child"), a minor, to be the biological child of Myron.

In the petition for a writ of error,[1] Mrs. George alleges that she is Myron's surviving spouse and thus has an interest in the action, specifically as the previously sole beneficiary of workers' compensation death benefits; she did not participate in the trial of the paternity action; and that there is error on the face of the record below in the paternity action. She further states that she is the executrix of Myron's estate. Mrs. George timely filed the requisite cost bond.

The order being appealed was entered by the trial court upon the petition of Belinda Gail Gammons, the natural mother of the child. The petition to establish paternity was filed on November 2, 1988. Ms. Gammons alleged that Myron was the father of the child, and further, that Myron was dead. She alleged that process should be served on David P. George, Myron's brother, and Ms. Gammons also alleged that David was the administrator of Myron's estate. Ms. Gammons alleged that the purpose of the suit was to establish a parent-child relationship between Myron and the child. David P. George answered the petition as the administrator of Myron's estate, stating that he had no objection to the entry of a decree that Myron was the child's father and alleging that Myron "never denied and stated that he was the father of KANDICE LEE GEORGE."

On November 15, 1988, the trial court appointed an *attorney ad litem* to represent the child, and a hearing was held at which only Ms. Gammons testified, and the final decree was signed in the paternity suit. At the hearing, Ms. Gammons testified that she and the child reside in Cleveland, Texas; Myron was the father of the child who was born on March 11, 1988; Myron died on December 23, 1987, and his brother, David, had been appointed administrator "over" his estate; and that the purpose of the suit was to get an order that Myron was the child's father. The child's birth certificate was introduced into evidence showing that Myron was named

1. The petition for writ of error was filed on   April 24, 1989.

as the father of the child. Ms. Gammons also testified that Myron knew she was pregnant and admitted to her that he was the father of the child. No other evidence was offered. The statement of facts shows appearances only by Ms. Gammons, her attorney and the child's attorney *ad litem.* The record does not contain any documentation of David George's alleged authority to act on behalf of his brother's estate.

On appeal Mrs. George raises four points of error. By the first point she contends that the paternity order is void on its face because the TEXAS FAMILY CODE does not allow such a decree after the putative father dies where there are no blood tests or statements of paternity. Her second point of error attacks the authority of David George to represent Myron in the paternity suit. The third point of error asserts that there was no valid service on the putative father, and that venue in Shelby County was improper. In the final point of error, Mrs. George contends that there is error on the face of the record in that it shows no independent assessment of the best interests of the child by the *ad litem* attorney.

This is an appeal by writ of error. Mrs. George must show that the petition was brought within six months of the date of the judgment by a party to the suit who did not participate in the trial, and that there is error on the face of the record. *Stubbs v. Stubbs,* 685 S.W.2d 643, 644 (Tex.1985); TEX.R.APP.P. 45. Ms. Gammons does not dispute the first three elements, i.e., that the writ is brought within six months of the date of judgment by a party to the suit who did not participate in the trial. Nor does she challenge Mrs. George's statement of the facts. Therefore, we will accept as true the facts as set out by Mrs. George. *See Tramco Enterprises, Inc. v. Independent American Savings Assoc.,* 739 S.W.2d 944, 946 (Tex.App.—Fort Worth 1987, no writ). The sole issue left for us to determine is whether there is error on the face of the record.

In her first point of error, Mrs. George contends that the trial court erred in entering an order of paternity when the putative father was dead before the action was ever filed. We agree. We conclude that a suit to determine paternity under Chapter 13 of the Texas Family Code does not survive the death of the putative father. Therefore, it is apparent on the face of the record that the trial court erred in entering an order designating Myron D. George as the father of Kandice Lee George when it is clear that Myron George was dead before the suit was filed.

In concluding that the Family Code does not contemplate the adjudication of paternity after the death of the putative father, we expressly decline to follow the San Antonio Court of Appeals. *See Manuel v. Spector,* 712 S.W.2d 219 (Tex.App.—San Antonio 1986) (orig. proceeding). In *Manuel,* the San Antonio Court was faced with the question of whether the trial court could order blood tests taken from the parents of the deceased putative father. Although the court of appeals ultimately decided that, in any event, the trial court was not authorized under the statute to order blood tests from anyone except the child, the mother, and the putative father, it decided that the Family Code paternity provisions should be liberally construed to allow a paternity action to be brought after the death of the putative father. *Manuel,* 712 S.W.2d at 222. Chief Justice Cadena concurred in the result, but concluded that he could see no necessity for the court's discussion of the survival of the cause of action to establish paternity under the Family Code. We also conclude that the discussion so holding is dicta.

The year after the delivery of the *Manuel* opinion, the legislature amended section 42(b) of the Probate Code to expressly provide a means whereby the illegitimate child may petition the probate court for a determination of its right to inherit from a decedent alleged to be the biological father. On the other hand, Chapter 13 of the Family Code contains absolutely no provision for the survival of an action to establish paternity after the death of the alleged biologi-

cal father. The *Manuel* opinion concedes that the general rule is that legitimation is a creature of statute, and that ordinarily when the statute fails to expressly provide for the survival of an action to establish paternity of an illegitimate child, the right of action does not survive the death of the alleged father. See Annotation—Death of Putative Father as Precluding Action for Determination of Paternity or for Child Support, 58 A.L.R.3d 188 (1974). The general rule should apply with special force since the legislature subsequently amended the Probate Code to expressly provide for just such a contingency. If the legitimation provisions of Chapter 13 of the Family Code had been appropriate and adequate to the purpose, the legislature hardly needed to have amended section 42(b) of the Probate Code.

■ The Probate Code governs intestate succession and provides an efficient mechanism for the determination of the decedent's heirs. Since the 1987 amendments to article 42(b), it can no longer be argued that the procedure is unconstitutionally discriminatory against illegitimates. Although workers' compensation death benefits are not obtained by inheritance but are conferred by the Workers' Compensation Act, nevertheless that statute directs that the benefits be distributed among the eligible classes of beneficiaries according to the laws of intestate succession. Tex.Rev.Civ. Stat.Ann. art. 8306, § 8a (Vernon Supp. 1990). It naturally follows that an illegitimate child seeking recognition as a benefi-

ciary of his or her deceased father should also follow the procedures specifically provided in the Probate Code for that purpose. See *Brown v. Edwards Transfer Co., Inc.,* 764 S.W.2d 220, 223 (Tex.1988).

■ By way of contrast, a suit under Chapter 13 of the Family Code seeks the establishment of the parent-child relationship, not a determination of heirship. The purpose of Chapter 13 is to protect the rights of mothers and putative fathers, and to serve the best interest of the children. *Garza v. Maverick Market, Inc.,* 768 S.W.2d 273, 275 (Tex.1989). A decree designating the alleged father as father of the child creates a parent-child relationship between them, and confers upon the father the rights, duties and powers set out in Tex.Fam.Code Ann. § 12.04 (Vernon Supp. 1990). The procedure provided by Chapter 13 is most frequently used to enforce the duty of support upon the biological father, a duty that terminates upon the father's death. *Hutchings v. Bates,* 406 S.W.2d 419, 420 (Tex.1966). However, all of the other rights and duties enumerated in section 12.04 are also inherently incapable of surviving the death of the parent.[2] The provisions requiring the blood testing of the mother, alleged father and the child, and the conclusive effect given those tests are further indications that Chapter 13 of the Family Code contemplates an action against a living putative father, not a posthumous suit. The blood tests may only be waived if the alleged father defaults or admits the allegation of paternity.

2. Including:
(1) the right to have physical possession, to direct the moral and religious training, and to establish the legal domicile of the child;
(2) the duty of care, control, protection, and reasonable discipline of the child;
(3) the duty to support the child, including providing the child with clothing, food, shelter, medical care, and education;
(4) the duty ... to manage the estate of the child ...
(5) the right to the services and earnings of the child;
(6) the power to consent to marriage, to enlistment in the armed forces of the United States, and to medical, psychiatric, and surgical treatment;

(7) the power to represent the child in legal action and to make other decisions of substantial legal significance concerning the child;
(8) the power to receive and give receipt for payments for the support of the child and to hold or disburse any funds for the benefit of the child;
(9) the right to inherit from and through the child;
(10) any other right, privilege, duty, or power existing between a parent and child by virtue of law.
Tex.Fam.Code Ann. § 12.04 (Vernon Supp.1990).

Finally, the notice provisions of section 50 of the Probate Code insure the notification of those persons that would be most affected by the designation of the decedent as the biological father of the child and therefore most apt to challenge the petition. The appropriate citation and notice provisions of the Family Code do not. Tex. Fam.Code Ann. § 11.09 (Vernon Supp. 1990). This is especially persuasive in this case where the only notice was to the "administrator" of an estate appointed in a state and county where the decedent did not live and had no assets. The widow who had been receiving the workers' compensation death benefits in issue and whose whereabouts were known to the petitioner received no notice.

We hold that a paternity suit cannot be brought under chapter 13 of the Family Code after the death of the putative father. The first point of error is sustained.

The cause is reversed. The judgment of the trial court is vacated and the cause is dismissed.