In the Interest of A_____ S_____ L_____, a Child.

No. 07–96–0060–CV.

Court of Appeals of Texas, Amarillo.

May 20, 1996.

Dunn & Walker, Jessica T. Brown, Jonette M. Walker, Lubbock, for appellant.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

BOYD, Justice.

■ This case presents the question whether an action to establish paternity of an illegitimate child may be brought after the death of the alleged father. For reasons we later express, we answer the question in the affirmative.

In her "Original Petition to Establish Paternity," Camelia Rincon (Rincon) averred that her son A____ S____ L____ had no legally presumed father, but further alleged that the boy's father was Alton Ray Little (Alton Ray), who died more than four years prior to the filing of the suit. Parenthetically, and paradoxically, the record reflects that a hearing on the petition was held on November 7, 1994, although the clerk's file mark indicates the petition was not filed in that office until June 8, 1995. Even so, the record before us is sufficient to vest jurisdiction to consider the appeal.

At the hearing on appellant's petition, appellant's counsel pointed out to the court that because the alleged father was deceased and the probate of his estate was closed, there was and could be no opposing party upon whom service of citation was required. At the hearing, Rincon testified that Alton Ray was the father of her child, and gave additional testimony about her relationship with the alleged father, including the fact that he had supported her and the child during his lifetime. She also introduced into evidence her son's birth certificate (which did not show the name of the father), several photographs of her son with the alleged father, and several affidavits from individuals averring that Alton Ray had acknowledged paternity during his lifetime. After the hearing the trial court entered an order dismissing appellant's petition in which the trial judge stated:

After hearing the evidence and argument of counsel, the Court holds that the Petitioner lacks standing to bring a paternity suit under Chapter 160 of the Texas Family Code after the death of a putative father. The Court further finds that, even if Petitioner has standing to bring said suit under Chapter 160 of the Texas Family Code, no evidence exists, as a matter of law, establishing the paternity. The Court further finds that the Petitioner adequately represented the rights of the child and that there was no need for the appointment of a guardian ad litem for the minor child.

Chapter 160 of the Family Code governs a suit affecting the parent-child relationship in which the parentage of the biological mother or father is sought to be adjudicated. Tex. Fam.Code Ann. § 160.001 (Vernon 1996). Section 160.002 makes specific provision as to the time within which such suits may be brought. Subsection (a) of the statute provides that suits to determine parentage must be brought on or before the second anniversary of the date the child becomes an adult or the suit is barred.[1] Subsection (c) provides that a voluntary paternity suit under § 160.201 et seq., i.e., those in which a statement of paternity has been executed by a man claiming to be the biological father of the child, may be brought at any time.[2] However, none of these provisions directly address a situation in which a child seeks to establish paternity after the death of the putative father.

Section 160.101 et seq. provides the mechanisms by which an alleged father's parentage may be contested. It provides for the taking of blood, body fluid and tissue samples for the purpose of "scientifically accepted parentage testing" and for the appointment of experts to conduct tests and to counsel the parties. Again, these provisions do not specifically deal with the situation that is before us.

Only a few courts have considered the question before us and they have arrived at differing conclusions. In *Manuel v. Spector*, 712 S.W.2d 219 (Tex.App.—San Antonio 1986, no writ), the court determined that an action under the Family Code to establish paternity may be brought after the death of the putative father. In *In the Interest of George*, 794 S.W.2d 875 (Tex.App.—Tyler 1990, no writ), noting that the San Antonio court's discussion and conclusion was *dicta*, the Tyler court held such an action could not be maintained.

■■■ Arguably, even though the *Manuel* court's result was the result of *dicta*, we find the reasoning it applied in reaching its conclusion sound and applicable. En route to its conclusion, the court noted that at common law, any right to seek establishment of paternity did not survive the death of the putative father. The court then cited *Death of Putative Father as Precluding Action for Determination of Paternity or for Child Support*, 58 A.L.R.3rd 188 (1974) in concluding that legitimatization is a creature of statute. *Manuel v. Spector*, 712 S.W.2d at 222. We agree with the court's conclusion that the common law rule of "statutes in derogation of the common law [must] be strictly construed" has been abrogated in this state, and that the legislature directs that such statutes should be liberally interpreted to achieve their purpose and promote justice. *Manuel v. Spector*, 712 S.W.2d at 222. As a result, social and remedial legislation will be liberally construed to effectuate its purpose. *Id.*; *Braugh v. Corpus Christi Bank & Trust*, 605 S.W.2d 691, 696 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.); *Texas Employment Commission v. Ryan*, 481 S.W.2d 172 (Tex.Civ.App.—Texarkana 1972, no writ); Tex.Gov't Code Ann. § 312.006 (Vernon 1988).[3] Of course, that general instruction is

---

**1.** The minor involved was born on March 2, 1978. If section 160.001 was applicable, he would not be barred from filing such a suit as he was under the age of eighteen at the time of the hearing.

**2.** If section 160.201 applied to this proceeding, suit would not be time barred.

**3.** Section 312.006 provides:

    (a) The Revised Statutes are the law of this state and shall be liberally construed to achieve their purpose and to promote justice.

    (b) The common law rule requiring strict construction of statutes in derogation of the common law does not apply to the Revised Statutes.

subject to the qualification that if a statute creates a liability unknown to the common law or deprives a person of a common law right, the statute will be strictly construed in that it will not be extended beyond its plain meaning or applied to cases not clearly within its purview. *Smith v. Sewell,* 858 S.W.2d 350, 354 (Tex.1993).

Sections 160.001 *et seq.* of the Family Code clearly authorize bringing actions through which the parentage of a child born out of wedlock may be determined and thus evinces the intent of the legislature. As we have recited above, the statutes spell out circumstances in which such a suit may be brought and circumstances in which they are time barred. Significantly, among those time-barred instances, the legislature did not include actions brought after the death of the alleged parent. The parentage statute does provide for the testing of blood, body fluid, or tissue samples, the results of which will be received into evidence,[4] but such samples would not be available in a post-death suit. Section 160.102 provides that an alleged parent's failure to appear authorizes the court to waive such parentage testing, indicating that the legislature did not consider such samples essential to deciding the paternity action.

We agree with the *Manuel* court that the trend in modern law is to accord children born out of wedlock the same legal status as other children. *Manuel,* 712 S.W.2d at 222. *See also Trimble v. Gordon,* 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977); *Weber v. Aetna Casualty & Surety Co.,* 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972); *Glona v. American Guarantee & Liability Insurance Co.,* 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968). By authorizing parentage suits, the legislature recognized and implemented that trend in Texas. To deprive an illegitimate child of the opportunity to establish his or her parentage would be contradictory to that purpose.

In construing a statute, a court may consider the object sought to be attained, common law or former statutory provisions, including laws on the same or similar subjects, and the consequences of a particular construction. Tex.Gov't Code Ann. §§ 311.023(1)(4)(5) (Vernon 1988). In addition, statutes are presumed to have been enacted in compliance with the state and federal constitutions and intended to attain a just and reasonable result. Tex.Gov't Code Ann. §§ 311.021(1)(3) (Vernon 1988).

Section 42(b)(1) of the Probate Code[5] provides, *inter alia,* that for the purpose of inheritance, a child is the child of his biological father if the child "is adjudicated to be the child of the father by court decree as provided by Chapter 13."[6] Significantly, the probate statute does not limit such parentage actions to those brought before the death of the parent, nor does it refer to such a limitation.

In differing with the *Manuel* court's conclusions concerning the right of a child to seek establishment of its parentage subsequent to the death of the parent, the *George* court speculated that the parentage provisions of the Family Code contemplated an action against a living putative father, not a posthumous suit. We respectfully differ. It may be true that a decree designating the alleged father as the father of the child creates a parent-child relationship between them and confers upon the father the rights, duties, and powers set out in the Family Code. It may also be true that the procedure we are discussing is most frequently used to enforce a duty of support which would terminate upon the father's death; however, this is not its only purpose or use.

In *Dickson v. Simpson,* 807 S.W.2d 726 (Tex.1991), a child born out of wedlock sought to establish paternal inheritance rights. The lower courts, applying Tex.Civ. Prac. & Rem.Code § 16.051, had held the action was time barred. At the time of the alleged father's death, section 42 of the Probate Code provided that paternal inheritance rights would be accorded illegitimate chil-

---

**4.** Tex.Fam.Code Ann. §§ 160.102–110 (Vernon 1996).

**5.** Tex.Prob.Code Ann. § 42(b) (Vernon Supp. 1996).

**6.** Chapter 13 is now §§ 160.001 *et seq.*

dren only if their parents had married after the child's birth, if the child had been voluntarily legitimated under then Chapter 13 of the Family Code (the progenitor of the present statutes), or if the child had been legitimated under Chapter 13. In its discussion, the court noted that none of the requirements under section 42 had been met; thus, the child was relegated to the mechanisms for legitimation under Chapter 13. *Id.* at 727. However, at that time Chapter 13 provided that the child must institute a paternity action prior to his or her first birthday or the action was time barred. Because the petitioner was forty-two years old at the time of the action, she was statutorily barred from the opportunity to establish paternity. The court held that such a bar unjustifiably discriminated against "illegitimates" and thereby violated the child's right to equal protection of the law mandated by the Fourteenth Amendment to the Federal Constitution. *Id.*

In its rumination, the court discussed the rule that classifications based on a characteristic beyond an individual's control violate equal protection unless they are substantially related to an important governmental interest. *Id.* at 727. The court noted that the rationale behind the statutory classifications in the probate code was the orderly administration of estates, an undeniably important government interest, but held that the statutes governing the case were not substantially related to the orderly administration of estates inasmuch as they effected a complete bar to recovery by any illegitimate child in Dickson's situation. *Id.*

If appellant is not able to bring a suit in this instance, the child would effectually be faced with a similar bar. We are unable to perceive a rationale substantially related to an important governmental interest that would justify preventing this child from having the opportunity to establish his parentage in a court of law. Thus, we hold a child such as A___ S___ L___ may bring such a suit attempting to show his parentage and that appellant has standing to bring the suit on her son's behalf.

Having made that decision, we must next consider the quantum of evidence by which the minor must prove paternity in the suit. We note that in actions brought under the Texas Wrongful Death Act,[7] an illegitimate child must establish his paternity by the "clear and convincing evidence" standard. *Garza v. Maverick Market, Inc.,* 768 S.W.2d 273, 276 (Tex.1989). Section 42 of the Probate Code also accords a child claiming to be the biological child of a decedent, who is not otherwise presumed to be a child of the decedent, the opportunity to establish paternity by the "clear and convincing evidence" standard. Tex.Prob.Code Ann. § 42(b) (Vernon Supp.1996). We think it consistent with those precedents that the evidence in a proceeding such as this must meet the "clear and convincing" standard.

Additionally, we note the trial judge expressly held in his dismissal that "no evidence exists, as a matter of law, establishing the paternity." We disagree. As we stated earlier, photographs of the child and father, prior statements by the alleged father bearing on his relationship with the child, and evidence of periods of conception and gestation were introduced into evidence. Such matters are admissible to prove paternity. *In Interest of B.M.N.,* 570 S.W.2d 493, 501 (Tex.Civ.App.—Texarkana 1978, no writ); *D.W.L. v. M.J.B.C.,* 601 S.W.2d 475, 476 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.).

The birth certificate listed the child's surname as "Little." Rincon testified that she began working for Alton Ray Little, the alleged biological father of the child, in August of 1976. She asserted that she and Alton Ray discussed the fact that she was pregnant with his child, and that "this was a planned event." Rincon introduced a series of pictures of her son and Alton Ray, stating they were taken when Alton Ray would "visit us." In the pictures, the child's age ranged from three or four days to seven years. The child was eight when Alton Ray was killed. Rincon also testified that her son and Alton Ray maintained a relationship throughout Alton Ray's life. She also testified that she had

---

7. Tex.Civ.Prac. & Rem.Code Ann. §§ 71.001– .011 (Vernon 1986 & Supp.1996).

intended to establish his paternity before Alton Ray's death.

Rincon also introduced into evidence the affidavit of Albert Perez, an attorney. Perez averred that he was retained in 1980 to obtain child support from the father of the child, who he "knew to be Alton R. Little." He also averred that Alton Ray acknowledged to him personally that he was the child's father, that an agreement was reached for Alton Ray to pay $300 per month in child support, and that the child support was paid. He then stated "[A] lawsuit to establish the parent-child relationship was not filed in the appropriate court in Lubbock County due to personal reasons of all parties involved." Three other affidavits were introduced in which affiants described occasions where Alton Ray gave Rincon money for the child's care or referred to the child as his son.

Viewed in the light by which we must view it, *Raw Hide Oil & Gas v. Maxus Exploration*, 766 S.W.2d 264, 266 (Tex.App.—Amarillo 1988, writ denied), the evidence was not legally insufficient and the trial court erred in this finding.

Appellant's point of error is sustained, the judgment of the trial court is reversed, and the cause is remanded to that court.